Affirmed in part, reversed in part, and remanded by published opinion. Judge GREGORY wrote the majority opinion, in which Judge KEENAN joined. Judge KEENAN wrote a concurring opinion. Judge WILKINSON wrote a dissenting opinion.
GREGORY, Circuit Judge:
In this sex discrimination and equal pay action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Section 216(b) of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), Appellants appeal the district court’s grant of Family Dollar Stores, Inc.’s (“Family Dollar”) motion to dismiss and/or strike class claims under Federal Rules of Civil Procedure 12(c), 12(f), and 23(d)(1)(D), and the district court’s denial of Appellants’ first motion to amend their complaint. We find that the district court’s denial of leave to amend the complaint was based on an erroneous interpretation of Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), and the denial was thus an abuse of discretion. Without resolving the class certification issue, we reverse and remand for the district court to consider whether, based on our interpretation of Wal-Mart, the proposed amended complaint satisfies the class certification requirements of Federal Rule of Civil Procedure 28.
I.
Family Dollar operates a chain of over 7,000 stores in more than forty states. Its operations are divided “into 95 regions, each run by a vice president, and then into districts, each run by a district manager. A district, which can vary in size from a single city to an area within multiple States, includes 10 to 30 retail stores, each run by a salaried store manager.” Grace v. Family Dollar Stores, Inc., 637 F.3d 508, 510 (4th Cir.2011). Family Dollar has approximately 400 district managers.
Appellants are fifty-one named plaintiffs and a putative class consisting of females who are, or have been, store managers of Family Dollar stores. Appellants primarily allege they are paid less than male store managers who perform the same job, requiring the same skill, responsibility and effort, under similar working conditions. In relevant part, Count I of their complaint asserts a disparate impact claim predicated on the following assertions:
Defendant engages in centralized control of compensation for store managers at the corporate level of its operations.
Defendant’s pay decisions and/or system includes subjectivity and gender stereo *109 typing that causes disparate impact to compensation paid to female store managers. Plaintiffs are aware, at this time, of no other criteria which causes such disparate impact other than gender bias, subjectivity and stereotyping. Plaintiffs are unaware, at this time, of any other specific criteria that are capable of separation and job relatedness.
Count II alleges a pattern-or-practiee of disparate treatment in violation of Title VII, and asserts that Family Dollar, who “engages in centralized control over compensation of store managers,” “willfully violated Title VII by paying the plaintiffs and other similarly situated females [] wages [unequal] to ... similarly situated males.” Count IV asserts a violation of the Equal Pay Act. Appellants seek injunctive and equitable relief, back pay, attorneys’ fees and costs, and punitive damages.
In 2008, Appellants filed their complaint in the U.S. District Court for the Northern District of Alabama. Upon a grant of Family Dollar’s motion to dismiss or transfer, the case was transferred to the U.S. District Court for the Western District of North Carolina. In opposing the motion to dismiss but consenting to transfer, Appellants cited Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir.2007) on reh’g en banc sub nom. 603 F.3d 571 (9th Cir.2010), pointing out that “[t]he Ninth Circuit has now affirmed certification of such a nationwide class having virtually identical claims of sex discrimination in pay to those brought in this case.” As is relevant here, the Ninth Circuit’s Dukes decision was subsequently reversed by the Supreme Court in Wal-Mart, 131 S.Ct. 2541.
Following the transfer, Family Dollar filed a motion for partial judgment on the pleadings, arguing that Appellants would be unable to satisfy the class action requirements in Rule 23(b). The filing of this motion had the effect of staying discovery. The district court denied Family Dollar’s motion without prejudice, holding that the class allegations in the complaint satisfied the pleading standards as established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The court further found that a fully developed evidentiary record was necessary to make findings as to class certification.
In July 2010, Family Dollar moved for summary judgment, but the court stayed the motion pending the completion of discovery. In August 2010, Family Dollar moved for a protective order with respect to class certification discovery, which the court denied. From January to July 2011, the parties unsuccessfully tried to resolve their dispute through mediation.
Following re-assignment of the case to a different judge, in September 2011, Family Dollar filed a motion to dismiss and/or strike the class allegations pursuant to Rules 12(c), 12(f), and Rule 23(d)(1)(D). Family Dollar argued that Wal-Mart, which was issued by the Supreme Court in June 2011, foreclosed Appellants’ class allegations and the monetary relief sought in the complaint.
Appellants opposed the motion to dismiss and moved the court for leave to file their first amended complaint,[1] arguing that the proposed amended complaint “elaborate^” on the original complaint’s allegation of “centralized control of compensation for store managers at the corporate level.” In the proposed amended *110 complaint, Appellants allege and challenge at least four company-wide policies. First, Appellants assert the existence of a mandatory salary range for Store Managers set annually by the corporate headquarters, which locks in prior disparities between male and female Store Managers’ compensation. Only corporate Vice Presidents can grant exceptions above the salary range, and they grant these exceptions disproportionally in favor of men. Second, Appellants allege the existence of an annual pay raise percentage set by corporate headquarters that corresponds to performance ratings. Regional Managers and Divisional Vice Presidents grant exceptions above the pay raise percentage, and “significantly greater” exceptions are granted to men. Third, Appellants claim a “built-in headwinds” corporate-imposed compensation criteria for Store Managers that takes into account “prior experience, prior pay, quartile rankings and other specific criteria which have a disparate impact.” Finally, Appellants allege the existence of a dual-system of compensation structured to pay less to persons promoted to store managers than to persons hired (from outside the company) to the same position, where “women are disproportionately promoted to Store Manager [positions,] while men are disproportionately hired into such jobs.”
The district court granted Family Dollar’s motion to dismiss, but denied Appellants’ motion for leave to amend. In granting Family Dollar’s request and dismissing the class allegations, the district court first relied on Appellants’ pre-WaZMart admission that their claims were “virtually identical” to those asserted by the Wal-Mart plaintiffs. Further, the court reasoned that “as a matter of law” under Wal-Mart, Appellants cannot satisfy the Rule 23(a) commonality requirement because they allege they were discriminated against on the basis of their gender as a result of “subjective decisions made at the local store levels.” The court dismissed the Equal Pay Act class claims on the same basis. Additionally, the district court held that Appellants’ claims fail to satisfy the predominance requirement in Rule 23(b)(3).
In denying Appellants’ motion for leave to amend, the court first held that amendment was futile because the only source of alleged discrimination in the proposed complaint is the “discretionary pay of managers,” which are “foreclosed” under Walr-Mart. Second, the court found that amendment would be prejudicial to Family Dollar because the original complaint was filed over three years prior, and the new complaint alleges a “new theory” only in an attempt to avoid Wal-Mart.
Appellants timely petitioned this Court under Federal Rule of Civil Procedure 23(f) for interlocutory appeal of the class certification decision.
II.
We granted Appellants’ petition under Rule 23(f), which authorizes courts of appeals to review decisions denying or granting class-action certification.[2] Appel *111 lants did not petition us directly for interlocutory review of the decision denying leave to amend the complaint. Appellate jurisdiction pursuant to Rule 23(f)’s interlocutory provision lies only where the subject matter of the appeal is the grant or denial of class certification. Fed. R. Civ. Pro. 23(f); see Brown v. Nucor Corp., 576 F.3d 149, 155 n. 8 (4th Cir.2009) (“[Appellants cannot appeal a discovery order under [Rule] 23(f).”). Thus, Family Dollar contends we lack jurisdiction to review the district court’s denial of Appellants’ motion for leave to amend their complaint.
We find that under our pendent appellate jurisdiction jurisprudence, we have jurisdiction and exercise our discretion to review the denial of the motion for leave to amend. See Rux v. Republic of Sudan, 461 F.3d 461, 475 (4th Cir.2006) (stating that pendent appellate jurisdiction, a judicially created exception to the final judgment rule, is discretionary). Pendent appellate jurisdiction is available only in two scenarios: “(1) when an issue is ‘inextricably intertwined’ with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is ‘necessary to ensure meaningful review[1] of an immediately appealable issue.” Id. (quoting Swint v. Chambers Cnty. Comm’n, 514 U.S. 35, 50-51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).
We may review the leave-to-amend decision under the “inextricably intertwined” methodology. Two separate rulings are “inextricably intertwined” if “the ‘same specific question’ will ‘underlie both the appealable and the non-appealable order,’ such that resolution of the question will necessarily resolve the appeals from both orders at once.” Ealy v. Pinkerton Gov’t Servs., Inc., 514 Fed.Appx. 299, 309 (4th Cir.2013) (per curiam, unpublished) (quoting Myers v. Hertz Corp., 624 F.3d 537, 553 (2d Cir.2010) (alterations omitted)). Here, the crux of the denial of class certification based on the allegations of the original complaint, and the denial of leave to amend the complaint turns on the district court’s interpretation of Wal-Mart. Because the interpretation of Wal-Mart underlies both the appealable certification decision and the non-appealable leave-to-amend decision, and resolution of the interpretation of Wal-Mart will necessarily resolve both appeals, we find that our exercise of pendent appellate jurisdiction is proper.
We may also review the leave-to-amend decision under the “necessary to ensure meaningful review” methodology. An issue is “necessary to ensure meaningful review” if “resolution of the appealable issue necessarily resolves the nonappealable issue or where review of the nonappealable issue is necessary to ensure meaningful review of the appealable one.” Berrey v. Asurco, Inc., 439 F.3d 636, 647 (10th Cir.2006). Here, as detailed below, the proposed amended complaint includes specific company-wide policies that allegedly cause a disparate impact—polices not specified in the original complaint that would ensure meaningful review of the class certification decision. Thus, we exercise pendent appellate jurisdiction to review the denial of leave to amend the complaint.
III.
Appellants raise three primary arguments on appeal. First, Appellants con *112 tend that the district court erred in holding that pursuant to Walr-Mart, the proposed class claims in the original complaint fail to satisfy Rule 23(a)’s commonality requirement. Second, Appellants urge that the district court failed to conduct a rigorous analysis of the certification issue and failed to consider the evidence. Finally, Appellants argue that the district court abused its discretion by failing to grant leave to amend the complaint. Because we find that the proposed amended complaint contains substantial allegations of centralized control, which are necessary to satisfy the commonality requirement for class certification as set forth in Walr-Mart, we focus our review in this appeal on the district court’s denial of leave to amend the complaint.
We review a district court’s decision to deny leave to amend a complaint for abuse of discretion, and it is our “policy to liberally allow amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a).” Galustian v. Peter, 591 F.3d 724, 729 (4th Cir.2010). A district court abuses its discretion “by resting its decision on a clearly erroneous finding of a material fact, or by misapprehending the law with respect to underlying issues in litigation.” Quince Orchard Valley Citizens Ass’n, Inc. v. Hodel, 872 F.2d 75, 78 (4th Cir.1989) (internal quotation marks omitted).
The district court denied Appellants’ request for leave to amend their complaint for two primary reasons. First, the district court determined that the proposed amendment was foreclosed by Wal-Mart, reasoning that like the original complaint, the proposed complaint pointed to subjective, individualized decisions and failed to satisfy the commonality requirement of Rule 23(a).[3] Second, the district court found that amendment would be prejudicial to Family Dollar because the proposed complaint was filed three years after the filing of the original complaint and alleges a new legal theory in order to avoid WalrMart. We address each rationale in turn.
A.
The district court’s denial of leave to amend the complaint on grounds that it was foreclosed by Wal-Mart is erroneous and based on a misapprehension of the applicable law. A review of Wal-Mart and its principles reveal the district court’s error.
i.
In Walr-Mart, the Supreme Court considered whether the commonality requirement under Rule 23 for class actions was satisfied in a sex discrimination suit alleging violations of Title VII. The plaintiffs filed suit on behalf of 1.5 million current and former female employees of Wal-Mart Stores, Inc. (“Wal-Mart”), asserting that Wal-Mart’s local managers exercised discretion over employees’ pay and promotions in a manner that disproportionally favored male employees and had an unlawful disparate impact on the female employees. Further, the plaintiffs alleged that Wal-Mart’s failure to curtail its managers’ discretion essentially amounted to unlawful disparate treatment.
*113 In holding that the allegations were insufficient to satisfy the commonality requirement for class actions, the Court found that the plaintiffs could not demonstrate that the class members “suffered the same injury,” i.e., their claims did not depend upon a “common contention” capable of “classwide resolution.” Wal-Mart, 131 S.Ct. at 2551. The Court reasoned that in the Title VII context, one individual's claim turns on “ ‘the reason for the particular employment decision.’ ” Id. at 2552 (quoting Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984)). And, in the class action context, “[wjithout some glue holding the reasons for all those decisions together, it will be impossible to say that examination of all class members’ claims for relief will produce a common answer to the crucial question why was I disfavored.” Id.
The Court explained that such glue might exist if: (1) the employer uses a biased testing procedure that produces a common result; or (2) there is “ ‘[sjignificant proof that an employer operated under a general policy of discrimination.’ ” Id. at 2253 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 159 n. 15, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). The latter form was more applicable in Wal-Mart, yet the Court found that a “general policy of discrimination” was “entirely absent.” Id. Specifically, the Court pointed to: (1) Wal-Mart’s express policy forbidding sex discrimination; (2) expert testimony of a “strong corporate culture” that made it vulnerable to gender bias but which lacked a nexus to employment decisions; and (3) a corporate policy of allowing discretion by local supervisors over employment matters, which to the Court was “just the opposite of a uniform employment practice that would provide the commonality needed for a class action” because it was “a policy against having uniform employment practices.” Id. at 2553-54.
The Court acknowledged that it previously recognized that giving discretion to lower-level employees may form the basis of Title VII liability under a disparate impact theory, but to do so, the plaintiffs must first identify the “specific employment practice that is challenged.” Id. at 2555 (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). However, in the case before it, the Court noted “[ojther than the bare existence of delegated discretion, respondents have identified no ‘specific employment practice’ — much less one that ties all their 1.5 million claims together.” Id. Thus, the Court concluded that the commonality requirement was not satisfied.
Two principles readily derived from Wal-Mart are applicable to this case. First, Wal-Mart did not set out a per se rule against class certification where subjective decision-making or discretion is alleged. Rather, where subjective discretion is involved, Wal-Mart directs courts to examine whether “all managers [ ] exercise discretion in a common way with[ ] some common direction.” Id. at 2554. Thus, to satisfy commonality, a plaintiff must demonstrate that the exercise of discretion is tied to a specific employment practice, and that the “subjective practice at issue affected the class in a uniform manner.” Elizabeth Tippett, Robbing a Barren Vault: the Implications of Dukes v. WalMart for Cases Challenging Subjective Employment Practices, 29 Hofstra Lab. & Emp. L.J. 433, 446 (2012).
As a corollary, even where company-wide subjective decision-making or discretion is alleged in the employment discrimination context, Wal-Mart indicates that if another company-wide policy is also alleged, courts must also consider it. See *114 Walr-Mart, 131 S.Ct. at 2553 (considering evidence of a company-wide “strong corporate culture” that makes Wal-Mart’s decision-makers susceptible to gender bias, but finding it unsatisfactory because the adduced expert testimony .failed to demonstrate that the corporate culture or “stereotyped thinking” affected employment decisions). Thus, even in eases where the complaint alleges discretion, if there is also an allegation of a company-wide policy of discrimination, the putative class may still satisfy the commonality requirement for certification.
Second, Wal-Mart is limited to the exercise of discretion by lower-level employees, as opposed to upper-level, top-management personnel. This qualitative distinction is critical because typically, in exercising discretion, lower-level employees do not set policies for the entire company; whereas, when high-level personnel exercise discretion, resulting decisions affect a much larger group, and depending on their rank in the corporate hierarchy, all the employees in the company. Consequently, discretionary authority exercised by high-level corporate decision-makers, which is applicable to a broad segment of the corporation’s employees, is more likely to satisfy the commonality requirement than the discretion exercised by low-level managers in Wal-Mart.
ii.
Courts’ rulings on class certification since Wal-Mart bear out the principles announced herein. See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 672 F.3d 482, 489 (7th Cir.2012) cert. denied, — U.S.-, 133 S.Ct. 338, 184 L.Ed.2d 157 (U.S.2012) (allowing Title VII class certification where the plaintiffs pointed to two company-wide policies); see also, Tabor v. Hilti, Inc., 703 F.3d 1206, 1229 (10th Cir.2013) (denying class certification where challenged policy was “highly discretional,” and the only other alleged company-wide policy was not maintained in a uniform manner); Bolden v. Walsh Constr. Co., 688 F.3d 893, 898 (7th Cir.2012) (denying class certification in a Title VII case where the only company-wide policy alleged was a policy of giving discretion to lower-level managers and there was a lack of evidence that discretion was exercised in a common way at some common direction).
A comparison of McReynolds and Bolden, both decisions from the Seventh Circuit, highlight the parameters of WalMart. In McReynolds, the plaintiff contested two national, company-wide policies — a teaming policy and an account distribution policy. 672 F.3d at 488. The teaming policy allowed brokers to form and distribute commissions with teams; brokers could decide for themselves whether to form teams; and, once the team was formed, brokers decide which other brokers to admit. Id. The plaintiffs argued that this national policy had a disparate impact because some successful teams refused to admit blacks. Under the account distribution policy, the customers’ accounts of a broker that had left the company were transferred within a branch office; brokers in that office competed for the accounts, and the broker who ultimately won the accounts was determined by company-wide criteria that included the competing brokers’ past records of revenue generated, and number of investments and clients retained. Id. at 488-89.
The Seventh Circuit noted that “Complex Directors” and “branch-office managers” “have a measure of discretion with regard to teaming and account distribution [because] they can veto teams or supplement criteria for distributions.” Id. at 489. The court explained:
*115 [T]o the extent that these regional and local managers exercise discretion regarding the compensation of the brokers whom they supervise, the case is indeed like Wal-Mart. But the exercise of discretion is influenced by the two company-wide policies at issue: authorization to brokers, rather than to managers to form and staff teams; and basing account distribution on the past success of the brokers who are competing for transfers.
[Permitting brokers to form their own teams and prescribing criteria for account distributions that favor the already successful — those who may owe their success to having been invited to join a successful or promising team — are practices of Merrill Lynch, rather than practices that local managers can choose or not at their whim. Therefore challenging those policies in a class action is not forbidden by the Wal-Mart decision.
Id. at 489-90. The court noted that in the absence of the teaming or account distribution policies, if instead the case involved delegation to local management the decision to allow teaming and the criteria for account distribution, McReynolds would be more like Wal-Mart. Id. at 490. Satisfied with the distinction between McReynolds and Wal-Mart, the court reversed the district court’s denial of class certification.
In Bolden, the Seventh Circuit reversed the district court’s grant of class certification. There, twelve black construction workers alleged that the supervisors practiced or tolerated racial discrimination in assigning overtime work and in working conditions (for example, derogatory graffiti in portable toilets and hangman’s nooses in toilets or break sheds). 688 F.3d at 895. The plaintiffs attempted to certify a class covering the employer’s 262 project sites in Chicago. Id. The Seventh Circuit noted that “[t]he sites had different superintendents, with different policies ... and many of the allegedly discriminatory practices depended on the foremen, who made most overtime offers, [and] chastised (or failed to chastise) workers who used racially inflammatory language.” Id. at 896. Additionally, the court pointed out the plaintiffs’ concessions that “[d]ifferent sites had materially different working conditions[;] ... most superintendents the[ ] [plaintiffs] had worked with did not discriminate; [and] their objections concerned only a handful of superintendents and foremen.” Id. The court likened the case to WalrMart and held that “when multiple [local] managers exercise independent discretion, conditions at different stores (or sites) do not present a common question.” Id. It then distinguished the case before it from McReynolds:
[In McReynolds,] we held that a national class could be certified to contest the policies], which [were] adopted by top management and applied to all of Merrill Lynch’s offices throughout the nation. This single national policy was the missing ingredient in Wal-Mart____ [Here,] Walsh had no relevant company-wide (or Chicago SMSA-wide) policy other than (a) its rule against discrimination, and (b) its grant of discretion to superintendents assigning work and coping with offensive or bigoted conduct. The first of these policies presents no problem ... and the second — the policy of on-site operational discretion is the precise policy that Wal-Mart says cannot be addressed in a company-wide class action.
Id. at 898. Thus, the court reversed the grant of class certification.
As evident from our application of the two principles in our discussion below, we believe the allegations in the proposed *116 amended complaint bear a closer resemblance to McReynolds.
iii.
As a preliminary matter, we note that the class allegations in the original complaint were insufficient to satisfy the commonality standard set forth in WalMart, because the complaint fails to allege that the “subjectivity and stereotyping” regarding compensation paid to female store managers were exercised in a common way with some common direction, and conclusorily alleges that Family Dollar engaged in “centralized control of compensation for store managers at the corporate level of its operations.” Aside from this bare allegation, the original complaint does not identify the decision-makers responsible for pay and promotion. Thus, we affirm the district court’s dismissal of the original complaint. We view the proposed amended complaint differently.
Applying the above principles, we find that the district court erred in denying leave to amend the complaint because it failed to consider whether: (1) in light of the discretion alleged, the discretion was exercised in a common way under some common direction, or despite the discretion alleged, another company-wide policy of discrimination is also alleged; and (2) the discretionary authority at issue was exercised by high-level managers, as distinct from the low-level type managers in WalMart.
In dismissing the proposed amended complaint, the district court held that Wal-Mart precludes Appellants’ class allegations of sex discrimination in pay because it believed that Appellants’ claims rest only on a theory that Family Dollar’s “use of subjective decision-making created disparities between male and female employees.” Additionally, the district court concluded that the company-wide employment policies in the proposed amended complaint were limited to subjective, individualized decision-making — a theory which it stated was “simply foreclosed” by Wal-Mart. The district court’s reasoning is based on a misapprehension of both the applicable law and policies alleged by Appellants.
The proposed amended complaint clearly specifies the following company-wide practices: (1) a salary range policy; (2) a pay raise percentage policy; (3) a “built-in headwinds” policy; and (4) dual pay system for hirees and promotees. To expound, the salary range policy sets mandatory minimum and maximum pay for Store Managers. According to Appellants, as a result of this company-wide salary range policy, there are significant disparities in the number of women in the upper pay levels of that range, and exceptions above the range — granted by the corporate Vice Presidents — are often granted more in favor of men. Further, under the pay raise percentage policy, an increase to a store manager’s compensation is determined by the manager’s prior performance ratings. The Regional Manager and Divisional Vice President grant exceptions above that pay raise percentage, and do so “significantly greater” in favor of men. Additionally, the “built-in headwinds” policy is a method for evaluating and determining compensation based on “prior experience, prior pay, quartile rankings and other specific criteria that have a disparate impact on women’s salaries because they incorporate and perpetuate such past discrimination.” Essentially, this is a testing or evaluation method that Appellants allege is biased. Finally, the dual pay system for hirees and promotees caps the compensation paid to individuals who are promoted below what lateral hires can make. Statistics proffered by Appellants show more women *117 promoted, and more men hired laterally, influencing the disparity in pay.
We do not now rule on the sufficiency of the allegations of the proposed amended complaint concerning the company-wide policies or on whether certification of the putative class will ultimately be warranted. However, in considering whether amendment of the complaint would be futile, we observe that the proposed amended complaint’s allegations of uniform corporate policies and of high-level corporate decision-making are substantively different from those that the Supreme Court held sufficient in Wal-Mart. For instance, the dual pay policy referenced in the proposed amended complaint is a company-wide policy that is in place in all Family Dollar Stores. The amended complaint alleges that women suffer disparate impact as a direct result of this corporate-imposed pay preference for lateral hires. In contrast, if decisions regarding the pay of hirees and promotees were left to the discretion of low-level managers, then the alleged discrimination would be akin to the discrimination alleged in Wal-Mart. See McReynolds, 672 F.3d at 490.
Moreover, the discretionary decisions set forth in the proposed amended complaint are made by high-level corporate decision-makers with authority over a broad segment of Family Dollar’s employees, not on an individual store level as in Wal-Mart. Contrary to the dissent’s unsupported characterization of the decision-makers in the present case as “middle management,” the amended complaint explains that exceptions to centrally determined salary ranges can only be made by “the corporate Vice President at corporate headquarters.” Similarly, exceptions to corporate-imposed raise percentages were made by regional managers and senior vice presidents, again at “corporate headquarters.” These allegations of high-level decision-making authority exercised by officials at corporate headquarters are thus different in kind from the allegations in Wal-Mart, in which local supervisors were vested with almost absolute discretion over pay and promotion decisions. Wal-Mart, 131 S.Ct. at 2547.
Given these substantial distinctions, Wal-Mart does not preclude as a matter of law a class certification based on the amplified allegations of the proposed amended complaint. In light of our policy favoring liberal amendment of complaints, we hold that the district court erred in concluding that amendment would be futile and in denying leave to amend the complaint. The district court therefore should revisit the certification question when the record underlying the allegations in the amended complaint has been more fully developed.
B.
The district court next denied leave to amend on grounds that amendment would be prejudicial to Family Dollar. In support of its prejudice conclusion, the district court stated that the original complaint was filed over three years prior, and Appellants did not seek to amend until briefing on Family Dollar’s motion for summary judgment was almost complete. Further, the court stated that the proposed complaint alleges a “new theory” in an attempt to avoid Wal-Mart. For the reasons stated below, we find that the district court’s determinations as to prejudice are clearly erroneous.
First, as to the delayed filing of the proposed complaint, review of the record indicates that the cited delay, for the most part, is attributable to Family Dollar. On numerous occasions, Family Dollar moved to dismiss the complaint and this had the effect of staying discovery, thereby prolonging the litigation. Appel *118 lants ought not to be penalized for this delay. Further, the typical briefing schedule for motions to dismiss or summary judgment involves the initial filing of a dismissal motion by the defendant, then the plaintiff files an opposition to the motion and if necessary, a motion to amend the complaint, and then the defendant files a reply brief. That Appellants filed the motion for leave to amend simultaneously with their opposition to Family Dollar’s motion for summary judgment does not appear out of turn and cannot be grounds for finding prejudice to Family Dollar.
With respect to the alleged “new theory,” review of the two complaints indicates that Appellants do not allege an entirely new theory in the amended complaint, but rather elaborate on one of two allegations that were previously pled in a eonclusory fashion. In their original complaint, Appellants alleged both “subjectivity and gender stereotyping,” as well as “centralized control of compensation for store managers at the corporate level of [Family Dollar’s] operations.” They originally failed to support either theory with substantial factual allegations, including the nature of the claimed “centralized control,” though the district court initially held that the original complaint survived Rule 12(b)(6). Following Wal-Mart, it became clear that Appellants needed to allege more control over pay determinations by upper-level decision-makers to meet the commonality requirement. The Appellants filed a proposed amended complaint accordingly and included numerous additional facts supporting their previous assertion of centralized corporate control.
Family Dollar makes much of the fact that Appellants previously stated their claims were virtually identical to those dismissed in Wal-Mart, seemingly alleging an estoppel argument. Even assuming that Appellants seek to pursue a completely new legal theory from the one asserted previously, such an approach is not cause for “judicial estoppel.” See Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir.1996) (For judicial estoppel to apply, “the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory.” (emphasis added) (citation omitted)). Appellants’ present factual position in the proposed amended complaint is consistent with the original complaint. As Appellants contend, the proposed amended complaint merely elaborates on the allegation in the original complaint that Family Dollar engages in “centralized control of compensation for store managers at the corporate level.” The legal theory remains the same, thus, judicial estoppel is not cognizable in this action.
Further, we have held that “the filing of a supplemental pleading is an appropriate mechanism for curing numerous possible defects in a complaint.” Franks v. Ross, 313 F.3d 184, 198 (4th Cir.2002) (also noting that “[u]nder Rule 15(d), a party may supplement its complaint ‘even though the original pleading is defective in its statement of a claim for relief or defense.’”). Hence, as Family Dollar believed that the original complaint was defective in light of Wal-Mart, Appellants should have been granted leave to amend to cure the defect, more especially because this was the first time they sought to amend their complaint.
Besides, although prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this “basis for a finding of prejudice essentially applies where the amendment is offered shortly before or *119 during trial.” Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir.1986). Because the parties were still in discovery, and many steps removed from trial, the purported undue prejudice to Family Dollar is overstated. We emphasize that our holding does not condone an automatic three-year period for plaintiffs to seek leave to amend a complaint. Rather, we conclude that Family Dollar would not be unduly prejudiced by the amendment under all the particular circumstances presented in this case.
IV.
The district court abused its discretion in denying Appellants’ request for leave to amend their complaint by primarily basing the denial on its erroneous interpretation of Wal-Mart. We reverse the district court’s decision in part and remand for the court to consider, consistent with this opinion, whether the proposed amended complaint satisfies the class certification requirements of Rule 23.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

. Family Dollar’s motion to dismiss and Appellants' motion for leave to amend the complaint were filed before the deadlines to end class certification discovery and to file a motion to certify the class.

. Class certification is typically pursued under Rule 23(c), which provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.” Id. 23(c). Family Dollar filed its motion to dismiss pursuant to Rule 12(c), 12(f), and 23(d)(1)(D) — rules not expressly within Rule 23(f)'s jurisdictional purview. See Fed. R. Civ. Pro. 23(f) advisory comm, note (1998). Nonetheless, we have jurisdiction to review the district court’s grant of Family Dollar’s motion to dismiss or strike the class allegations because the district court’s ruling is the functional equivalent of denying a motion to certify the case as a class action. See In re Bemis Co., Inc., 279 F.3d 419, 421 (7th Cir.2002) (holding that the re *111 jection of the position taken in the answer that the case could not proceed as a class action is the "functional equivalent of denying a motion to certify a case as a class action”). Family Dollar does not dispute the basis for asserting jurisdiction over the class certification decision.

. Under Rule 23, a class may be certified if (1) "the class is so numerous that joinder of all members is impracticable” (numerosity); (2) there are one or more "questions of law or fact common to the class” (commonality); (3) the named parties’ "claims or defenses are typical of the claims or defense of the class” (typicality); and (4) the class representatives “will fairly and adequately protect the interests the class” (adequacy of representation). Fed.R.Civ.P. 23(a). Commonality is the only factor at issue in this appeal. We make no findings or conclusions as to the other requirements.

. As discussed in Part III, plaintiffs also repeatedly represented to the district court the extreme similarity of their claims to those brought in Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), which were founded on allegedly discriminatory exercises of discretion.