NIEMEYER, Circuit Judge,
writing separately and dissenting from the judgment in part in this Part II.B.
B
Nevertheless, the majority concludes that the district court erred in declining to send Moses’ non-core claim to arbitration. Judge Gregory concludes that Moses failed to meet her burden of showing that Cash-Call’s statutory right to the enforcement of arbitration agreements should be trumped by adjudication of her non-core claim in a bankruptcy court and therefore that the bankruptcy court “ha[d] no discretion to refuse to arbitrate [the] non-core claim'.” Post, at 83. He insists that splitting Moses’ core and non-coré claims — so that the bankruptcy court can adjudicate her core claim and a representative of the Cheyenne River Sioux Tribe can adjudicate her non-core claim — would not substantially interfere with Moses’s efforts to reorganize, despite the fact that the main element of Moses’ non-core claim, the legality of the Loan Agreement, will necessarily be determined by the bankruptcy court in ruling on Moses’ core claim and on her objection to CashCall’s proof of claim. Writing separately, Judge Davis would hold that Cash-Call’s abandonment of its proof of claim renders Moses’ core claim moot and eliminates any justification for retaining jurisdiction over Moses’ non-core claim in the bankruptcy proceedings, despite the fact that because we lack jurisdiction to revisit the denial of CashCall’s motion to withdraw its proof of claim, as we hold in Part III, post, at 77-82, the proof of claim remains to be decided by the bankruptcy court.
I believe that splitting Moses’ closely related claims and sending Moses’ non-core claim to a questionable and perhaps illusory arbitration proceeding would inherently conflict with the purposes of the Bankruptcy Code, and therefore I dissent from the court’s judgment insofar as it holds that the district court abused its discretion in retaining jurisdiction over Moses’ non-core claim.
Even though non-core claims are ancillary to reorganization, it is apparent that *74 they can nonetheless affect a debtor’s efforts to reorganize and that sending non-core claims to arbitration can, in given circumstances, interfere with the debtor’s chance to complete a fair and efficient Chapter 13 reorganization. Therefore, with core and non-core claims alike, courts are required to inquire into the nature of the claim and the facts of the specific bankruptcy to determine whether enforcing arbitration would inherently conflict with the purposes of the Bankruptcy Code. See Cont’l Ins., 671 F.3d at 1021 (“[T]he core/non-core distinction, though relevant, is not alone dispositive”); Mintze, 434 F.3d at 229 (“The core/non-core distinction does not ... affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement”). In addition, when a court is presented with both a core claim and a non-core claim in a single adversary proceeding, the discretion to retain the non-core claim can depend on the strength of its relationship with the core claim.
Here, if a separate tribunal were to award Moses damages for CashCall’s efforts to collect an illegal loan, the increase in Moses’ ability to pay should accrue to the other unsecured creditors. See Arnold v. Weast (In re Arnold), 869 F.2d 240, 243 (4th Cir.1989) (“When a debtor’s financial fortunes improve, the creditors should share some of the wealth”). But the many questions surrounding the Loan Agreement’s arbitration procedure raise doubts that arbitration would conclude in time for Moses’ creditors to seek modification of Moses’ Chapter 13 plan so that they could share in any recovery.
The Loan Agreement provides that arbitration “shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules.” It also provides that arbitration shall be administered by the American Arbitration Association, JAMS, or another organization agreed upon by the parties. Thus, before arbitration could even begin, litigation over the arbitration procedure would seem likely. Accord Heldt, 12 F.Supp.3d at 1191 (noting that because no party had identified an “ ‘authorized representative’ of the Cheyenne River Sioux Tribal Nation [who] is an arbitrator in the [American Arbitration Association] or JAMS system,” the arbi-. tration agreement left a “conundrum” as to who would perform the arbitration). In addition, courts reviewing Western Sky loan agreements with language similar to that in the Loan Agreement in this case have found that the Cheyenne River Sioux Tribe does not authorize arbitration and consequently has no authorized arbitrators or consumer dispute rules. See Jackson, 764 F.3d at 779 (“The arbitration clause here is void not simply because of a strong possibility of arbitrator bias, but because it provides that a decision is to be made under a process that is a sham from stem to stern”); Inetianbor, 768 F.3d at 1354 (similar); Heldt, 12 F.Supp.3d at 1192 (“[T]he unique circumstances of this case could give rise to ... [a] ‘procedural nightmare’ and [a] lack of ‘orderly administration of justice’ ” (quoting Nat’l Farmers Union Ins. Co. v. Crow Tribe of Indians, 471 U.S. 845, 856, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985))).
My colleagues suggest that the record is not sufficiently developed for us to make conclusions about the specified tribal arbitration. I submit, however, that we need not make findings on that issue. Rather, the doubt already expressed by other courts about the legitimacy and adequacy of the Loan Agreement’s tribal arbitration mechanism indicates at the very least that the issue will be the subject of additional litigation. See Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) (“[F]ederal courts, in appropriate circum *75 stances, may take notice of proceedings in other courts, ... if those proceedings have a direct relation to matters at issue” (internal quotation marks and citation omitted)). Thus, it might be years before any resolution of Moses’ non-core claim can be obtained. Indeed, it is not hard to imagine scenarios in which an arbitral award would come after October 2017, when Moses’ Chapter 13 plan will have terminated, preventing Moses’ creditors from petitioning for plan modification. Such delays with respect to the determination of the validity of a claim made against one of Moses’ creditors will not only interfere with the “the prompt and effectual administration and settlement of the [debtor’s] estate,” a principal purpose of the Bankruptcy Code, Katchen, 382 U.S. at 328, 86 S.Ct. 467, but also prejudice the rights of creditors to share in any increase in Moses’ estate. In addition, it hardly undermines the policy favoring arbitration to deny arbitration where there are “no rules, guidelines, or guarantees of fairness.” Jackson, 764 F.3d at 779.
More importantly, Moses’ non-core claim is directly tied to her core claim.[1] Moses alleges in her non-core claim that CashCall’s efforts to collect the debt violated the North Carolina Debt Collection Act because the underlying loan obligation was illegal, the very issue presented by her core claim. Therefore, separating her two claims will force an arbitrator and the bankruptcy judge separately to decide the validity of the underlying debt. That scenario inherently conflicts with the purposes of the Bankruptcy Code for several reasons.
First, having two tribunals adjudicate the identical issue is inefficient. CashCall argues that efficiency concerns are not a valid basis for ignoring the FAA, noting that the Supreme Court has held that the FAA “requires district courts to compel arbitration of pendent arbitrable claims ... even where the result would be the possibly inefficient maintenance of separate proceedings in different forums,” because the FAA is not chiefly concerned with “promoting] the expeditious resolution of claims,” Dean Witter Reynolds, 470 U.S. at 217, 219, 105 S.Ct. 1238 (emphasis added); see also KPMG LLP v. Cocchi, — U.S. -, 132 S.Ct. 23, 26, 181 L.Ed.2d 323 (2011) (per curiam) (similar). While this analysis governs in other contexts, intervening concerns of bankruptcy change the analysis here, because the Supreme Court’s McMahon framework directs courts to consider whether there is an “inherent conflict between arbitration and the statute’s underlying purposes,” 482 U.S. at 227, 107 S.Ct. 2332, and the “expeditious resolution of claims” is at the heart of the Bankruptcy Code. Thus, as other courts of appeals have recognized, the arbitration calculus is different when bankruptcy is involved, requiring courts to consider efficiency concerns. See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Management Corp., 118 F.3d 1056, 1069 n. 21 (5th Cir.1997) (“[I]n-sofar as efficiency concerns might present *76 a genuine conflict between the Federal Arbitration Act and the [Bankruptcy] Code — for example where substantial arbitration costs or severe delays would prejudice the rights of creditors or the ability of a debtor to reorganize — they may well represent legitimate considerations”); Cont’l Ins., 671 F.3d at 1023 n. 9 (observing that the general proposition that “judicial economy and centralization of disputes are not sufficient bases for nonenforcement of an otherwise applicable arbitration clause ... does not hold in the bankruptcy context”); Gandy, 299 F.3d at 499 (“[Ejfficiency concerns may be legitimate considerations in the bankruptcy context, where efficient resolution of claims and conservation of the bankruptcy estate assets are integral purposes of the Bankruptcy Code” (citing Ins. Co. of N. Am., 118 F.3d at 1069 n. 21)). In sum, while efficiency is not considered in determining whether to withhold arbitration in other contexts, it is relevant where, as here, the Bankruptcy Code is involved. Accord Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1131 (9th Cir.2012) (distinguishing KPMG because it “was not a bankruptcy case”). To be sure, the efficiency from “centralization [may] not, in and of itself, [be] a valid reason to deny arbitration,” as Judge Gregory observes, post, at 86, but where, as here, decentralization would be particularly inefficient, an arbitration agreement should give way.
Second, bifurcating Moses’ claims will inherently conflict with the purposes of the Bankruptcy Code because an arbitration proceeding could come to a judgment before the bankruptcy court ruling and inappropriately bind the bankruptcy court on the validity of CashCall’s Loan Agreement, a constitutionally core issue for the bankruptcy court to decide. See Phillips, 403 F.3d at 169 (“[P]ermitting an arbitrator to decide a core issue would make debtor-creditor rights ‘contingent upon an arbitrator’s ruling’ rather than the ruling of the bankruptcy judge assigned to hear the debtor’s case” (quoting Note, Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act, 117 Harv. L.Rev. 2296, 2307 (2004))); Ackerman, 687 F.3d at 1131 (“We find unpersuasive [the creditors’] argument that the bankruptcy court inappropriately denied them the opportunity to arbitrate because it was concerned about being collaterally stopped by the arbitrator’s decision”). And even if collateral es-toppel were not to apply, bifurcation “could yield different results and subject parties to dichotomous obligations.” Gandy, 299 F.3d at 499. Judge Gregory’s suggestion that the district court could stay arbitration until it has ruled on Moses’ core claim, post, at 86, only highlights further the inefficiencies associated with bifurcating Moses’ claims.
Third, the additional litigation costs inherent in being forced to litigate claims before two separate tribunals will harm Moses’ creditors by reducing the amount of income that Moses has available to pay her debts. See Phillips, 403 F.3d at 170 (holding that “ordering arbitration and staying the adversary proceeding would substantially interfere with White Mountain’s efforts to reorganize” because arbitration would “impose additional costs on the estate and divert the attention and time of the debtor[],” whereas “allowing the adversary proceeding to go forward would ‘allow all creditors, owners and parties in interest to participate [in a centralized proceeding] at a minimum of cost’” (second alteration in original)); see also Kent L. Richland, Stern v. Marshall: A Dead End Marathon?, 28 Emory Bankr. Dev. J. 393, 413 (2012) (“Particularly where the bankruptcy estate is relatively small, keeping the entire matter in the bankruptcy court may be the only way to *77 preserve the estate against excessive costs”).
Moreover, at a more general level, courts have regularly refused to bifurcate related core and non-core matters. In Gandy, the debtor initiated an adversary proceeding alleging causes of action created by the Bankruptcy Code as well as state-law causes of action for breach of fiduciary duty, negligence, fraud, constructive trust, and breach of contract. The Fifth Circuit affirmed the district court’s refusal to divide the debtor’s case by sending some claims to arbitration because “[p]arallel proceedings would be wasteful and inefficient, and potentially could yield different results and subject parties to dichotomous obligations.” Gandy, 299 F.3d at 499.[2] Similarly, in Ackerman, the Ninth Circuit refused to compel arbitration of a creditor’s claims for breach of contract, fraud, and breach of fiduciary duty because “allowing an arbitrator to decide issues that are so closely intertwined” with the creditor’s core claim that the underlying debt was not dischargeable “would ‘conflict with the underlying purposes of the Bankruptcy Code.’ ” 687 F.3d at 1130-31 (quoting Cont’l Ins., 671 F.3d at 1021). And in Continental Insurance, the Ninth Circuit held that because a creditor’s non-core breach of contract claim challenging actions that the debtor took in bankruptcy was “inextricably intertwined” with the debtor’s bankruptcy plan confirmation, “adjudication of [the creditor’s] claim in any other forum other than a bankruptcy court would conflict with ‘fundamental bankruptcy policy.’ ” 671 F.3d at 1022 (internal quotation marks omitted).
At bottom, I simply cannot see how the district court abused its discretion by keeping Moses’ non-core claim together with the core claim for adjudication in the bankruptcy court in the circumstances of this case. I would therefore affirm.
NIEMEYER, Circuit Judge, writing for the court:
III
To support his argument that the district court erred in keeping the related core and non-core claims in bankruptcy, Judge Davis, in his separate opinion concurring in the judgment in part and dissenting in part, would have us review the unappealed and unappealable interlocutory January 3, 2013 order issued by the bankruptcy court denying CashCall’s motion to withdraw its proof of claim. He finds this approach necessary in order to conclude that the district court erred in affirming the bankruptcy court’s order denying the motion to dismiss or compel arbitration because, as he reasons, “once CashCall abandons its proof of claim and releases Moses from her obligations under the loan agreement, the sine qua non of the bankruptcy court’s justification for retaining jurisdiction over Moses’s non-core claim *78 evaporates; there is no core claim to remit to arbitration, and the only question is whether to compel arbitration on Moses’s non-core claim.” Post, at 91. But the only issue that CashCall has appealed— and, indeed, that it could appeal — is whether the district court erred in entering its order of February 4, 2014, affirming the bankruptcy court’s ruling that the related core and non-core claims be decided together'in the bankruptcy court and, to that end, denying CashCall’s motion to dismiss or compel arbitration of those claims. This is also the only issue that the parties briefed. Because we have no jurisdiction to review the bankruptcy court’s January 3 order and therefore no power to allow CashCall to withdraw its proof of claim, Moses’ core claim is not moot.
In bankruptcy cases, courts of appeals have jurisdiction only over (1) “final decisions, judgments, orders, and decrees” of district courts, pursuant to 28 U.S.C. § 158(d)(1); (2) interlocutory appeals from district courts under the collateral-order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); (3) appeals from interlocutory or final orders of the bankruptcy court in which the bankruptcy court, the district court, or the parties acting jointly, certify an appeal and the court of appeals authorizes a direct appeal, pursuant to § 158(d)(2); and (4) interlocutory appeals in which a district court states in uniting “[i] that an order not otherwise appealable ... involves a controlling question of law as to which there is substantial ground for difference of opinion and [ii] that an immediate appeal from the order may materially advance the ultimate determination of the litigation,” 28 U.S.C. § 1292(b). See Legal Representatives for Future Claimants v. Aetna Cas. & Sur. Co. (In re Wallace & Gale Co.), 72 F.3d 21, 24 (4th Cir.1995). In addition, Congress has created limited exceptions to the final-judgment rule for orders implicating certain subjects. See, e.g., 9 U.S.C. § 16(a)(1)(A).[3]
As CashCall itself recognized, the bankruptcy court’s order denying its motion to withdraw its proof of claim was interlocutory. Pursuant to § 158(a)(3), an interlocutory order of a bankruptcy court is reviewable by a district court only with that court’s permission. The district court here specifically denied CashCall permission to appeal the bankruptcy court’s order to it and accordingly the district court never reviewed the bankruptcy court’s order on the merits. Thus, the district court proceedings never gave rise to a reviewable final order of the district court that we could review under § 158(d)(1) or to an interlocutory order of the district court that we could review under the collateral-order doctrine or § 1292(b). And no court *79 ever made a certification under § 158(d)(2). Indeed, CashCall has not suggested that the bankruptcy court’s order is appealable under any possible formulation.
Moreover, even if there were any question as to our lack of jurisdiction over the order denying CashCall’s motion to withdraw, CashCall did not appeal that order. A court of appeals only has jurisdiction over an order that has actually been appealed and presented to it. See Fed. R.App. P. 3-4; Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 116 L.Ed.2d 678 (1992) (“[Federal Rule of Appellate Procedure] 3’s dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review.... [N]oncom-pliance is fatal to an appeal.”); cf. Bowles v. Russell, 551 U.S. 205, 214, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) (“[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement”). CashCall’s notice of appeal did not even reference the bankruptcy court’s January 3 order, instead carefully limiting the scope of the appeal to the district court’s February 4 order:
Defendant CashCall, Inc. appeals to the United States Court of Appeals for the Fourth Circuit from the judgment and order of the District Court for the Eastern District of North Carolina, entered in this case on February J, 201 k, affirming an order of the Bankruptcy Court for the^ Eastern District of North Carolina that denied CashCall’s motion to dismiss or stay and compel arbitration of the underlying adversary proceeding.
(Emphasis added). And unsurprisingly, CashCall never addressed the merits of the bankruptcy court’s January 3 order in its briefing before this court. Cf. Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir.2005) (recognizing that in order to demonstrate that the appellee “had notice of [an] issue and the opportunity to fully brief it,” the appellant “needs to address the merits of a particular issue in her opening brief’ (emphasis added)); Edwards v. City of Goldsboro, 178 F.3d 231, 241 n. 6 (4th Cir.1999) (stating that failure to raise a claim and the reasons therefore in the opening brief “triggers abandonment - of that claim on appeal”).
Despite the clear absence of any power to review the interlocutory order of the bankruptcy court, Judge Davis would hold that the doctrine of pendent appellate jurisdiction gives us jurisdiction over that order. That doctrine, however, is not applicable to the circumstances presented here for several reasons.
First, there is no final judgment to which review of the bankruptcy court’s order could be appended. In Swint v. Chambers County Commission, 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), the Supreme Court refused to apply the doctrine of pendent appellant jurisdiction to consider an unappealable issue where the order to which that issue would be appended was an interlocutory order ap-pealable only under the collateral-order doctrine. The Court explained that “[i]f courts of appeals had discretion to append to a Cofeeri-authorized appeal from a collateral order further rulings of a kind neither independently appealable nor certified by the district court, then the two-tiered arrangement § 1292(b) mandates would be severely undermined.” Id. at 47, 115 S.Ct. 1203; see also id. at 49-50, 115 S.Ct. 1203 (“[A] rule loosely allowing pendent appellate jurisdiction would encourage parties to parlay Cohen-type collateral orders into multi-issue interlocutory appeal tickets”). To safeguard Congress’ mandate, the Swint Court held that in appeals authorized by the collateral-order doctrine, courts only have jurisdiction to consider claims that “fall within Cohen’s collateral- *80 order exception to the final-judgment rule.” Id. at 49, 115 S.Ct. 1203 (quoting Abney v. United States, 431 U.S. 651, 663, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)) (internal quotation marks omitted). Here, the district court’s order affirming the denial of CashCall’s motion to dismiss or compel arbitration was an interlocutory order, and appellate jurisdiction over that order was authorized solely by 9 U.S.C. § 16(a)(1)(A), which permits an interlocutory appeal of an order refusing to stay an action pending arbitration. See Thomson McKinnon Sec., Inc. v. Salter, 873 F.2d 1397, 1399 (11th Cir.1989) (“Under [§ 16(a)(1) ], interlocutory orders refusing to compel arbitration now are appealable— even though they are not final within the meaning of 28 U.S.C. § 1291”); see also, e.g., Campbell v. Gen. Dynamics Gov’t Sys. Corp., 407 F.3d 546, 550 (1st Cir.2005); Arnold v. Arnold Corp.-Printed Communc’ns for Bus., 920 F.2d 1269, 1274 (6th Cir.1990). To apply the doctrine of pendent appellate jurisdiction in this context would be to sanction the conversion of a narrow, statutorily authorized interlocutory appeal into a full-blown appeal, precisely the effect that the Swint Court sought to avoid — i.e., the practical and flexible approach to pendent appellate review that Judge Davis would have us adopt. See Swint, 514 U.S. at 45, 115 S.Ct. 1203 (noting that such an approach would be incompatible with “the statutory instructions Congress has given to control the timing of appellate proceedings”).
Second, the concerns expressed in Swint are magnified in this case because the district court, acting under 28 U.S.C. § 158(a)(3), specifically denied CashCall leave to appeal the bankruptcy court’s interlocutory order to the district court. As the Second Circuit recognized in Gibson v. Kassover (In re Kassover), 343 F.3d 91, 95 (2d Cir.2003), “[i]n requiring that a district court grant leave to appeal before rendering a decision on the merits [in § 158(a)(3) ], Congress surely intended to make the declining of such leave the end of the matter, save perhaps for the seeking of an extraordinary writ.” Were it otherwise, appellate review would proceed “without the benefit of a district court’s findings of fact and conclusions of law.” Id. Indeed, courts of appeals have regularly held that they lack jurisdiction to review issues in the analogous situation where a district court has declined to certify a question for interlocutory appeal to a court of appeals under § 1292(b). See Taylor v. Robertson, 879 F.2d 863 (4th Cir.1989) (unpublished) (“As the district court expressly declined to issue the required certification, we deny the petition for an interlocutory appeal under § 1292(b)”); see also, e.g., In re Ford Motor Co., 344 F.3d 648, 654 (7th Cir.2003) (“Certification by the district court is a jurisdictional prerequisite to interlocutory review under § 1292(b) ...”); Mason v. Stallings, 82 F.3d 1007, 1010 (11th Cir.1996) (“The district court in this ease denied a § 1292(b) certification. Therefore, it is not open to us to reverse the denial of summary judgment....”); Green v. Occidental Petrol. Corp., 541 F.2d 1335, 1338 (9th Cir.1976) (“Concurrence of both the district court and the appellate court is necessary and we are without power to assume unilaterally an appeal under section 1292(b)”); In re Master Key Antitrust Litig., 528 F.2d 5, 8 (2d Cir.1975) (“[The district court’s] refusal to certify the interlocutory appeal of [its] rulings is, of course, not appealable ...”); United States v. 687.30 Acres of Land, 451 F.2d 667, 670 (8th Cir.1971) (“We have no jurisdiction to review the trial court’s denial of the § 1292(b) certificate”). In short, applying pendent appellate jurisdiction — “an exception [to the final-judgment requirement] of limited and narrow application,” Rux v. Republic of Sudan, 461 F.3d 461, *81 475 (4th Cir.2006) — to review an issue that the district court expressly refused to consider itself under § 158(a)(3) and that was never certified to us under § 158(d)(2) or § 1292(b) would circumvent the clear intent of Congress.
Third, the bankruptcy court’s January 3 interlocutory order is not, as Judge Davis contends, inextricably intertwined with the district court’s February 4 order affirming the denial of CashCall’s motion to dismiss the adversary complaint or compel arbitration. Although the doctrine of pendent appellate jurisdiction is available “when an issue is ‘inextricably intertwined’ with a question that is the proper subject of an immediate appeal,” Rux, 461 F.3d at 475 (quoting Swint, 514 U.S. at 51, 115 S.Ct. 1203), separate rulings are inextricably intertwined only if “the same specific question will underlie both the appealable and the non-appealable order,” Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 111 (4th Cir.2013) (emphasis added) (quoting Ealy v. Pinkerton Gov’t Servs., Inc., 514 Fed.Appx. 299, 309 (4th Cir.2013) (per curiam)), cert. denied, — U.S. -, 134 S.Ct. 2871, 189 L.Ed.2d 848 (2014). Here, CashCall’s motion to dismiss or compel arbitration presents the question of whether arbitration of Moses’ claim would substantially interfere with the purposes of the Bankruptcy Code. By contrast, review of Cash-Call’s motion to withdraw its proof of claim would require a court, to consider the distinct question of whether withdrawal would cause Moses to suffer prejudice.
Judge Davis, also recognizing that Cash-Call never included the bankruptcy court’s January 3 interlocutory order in its notice of appeal, asserts nonetheless that we have “discretion” to review that order, post, at 88, because notices of appeal are to be liberally construed, post, at 91 (citing Powell v. Symons, 680 F.3d 301, 306 n. 2 (3d Cir.2012)). But this case does not allow for any construction of the notice of appeal. CashCall’s notice of appeal was clear and explicit in limiting the appeal to the February 4 order. CashCall did not appeal the bankruptcy court’s January 3 interlocutory order, stating in its brief that it “simply cannot appeal that issue yet.” We cannot invoke the policy of liberal construction to create an entirely new document. That policy applies only when “a party files a notice of appeal ‘that is technically at variance with the letter of a procedural rule, ... [but] the litigant’s action is the functional equivalent of what the rule requires.’ ” United States v. Little, 392 F.3d 671, 681 (4th Cir.2004) (quoting Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)); see also Gunther v. E.I. du Pont De Nemours & Co., 255 F.2d 710, 717 (4th Cir.1958) (“When it appears that adequate information is given by the notice, the appeal should not be dismissed for mistakes which do not mislead or prejudice the appellee”).
Somehow reaching the merits of the bankruptcy court’s unappealed and unap-pealable January 3 order, Judge Davis would conclude that the bankruptcy court abused its discretion in denying CashCall’s motion to withdraw its proof of claim because, as he views it, Moses would not be prejudiced by the withdrawal. Post, at 89-90. He fails, however, to consider the more relevant equitable considerations presented to the bankruptcy court. For instance, CashCall issued a loan at nearly 15 times the maximum allowable interest rate under North Carolina law and then filed a proof of claim to collect Moses’ unpaid debt, just as it had done in 118 other cases in the Eastern District of North Carolina. Had Moses not objected to CashCall’s claim, CashCall would have been more than happy to use the federal courts to collect $1,929.02, which amounted to a 92.9% return on its investment over a *82 period of less than three months. But as soon as Moses fought back, alleging that the Loan Agreement was issued in violation of state usury laws and seeking damages for CashCall’s efforts to collect an illegal debt, CashCall attempted to withdraw its proof of claim in an effort to divest the bankruptcy court of jurisdiction and shunt Moses’ claims into tribal arbitration, causing additional costs and delays.
CashCall’s gamesmanship could not have been clearer. Denying Moses the benefit of the bankruptcy forum and requiring her, with her meager funds, to challenge the questionable and perhaps even illusory tribal arbitration process and to try her case in another forum, only to bring back any proceeds to the bankruptcy court, would hardly serve equity. Bankruptcy courts are courts of equity, see IRS v. Levy (In re Landbank Equity Corp.), 973 F.2d 265, 271 (4th Cir.1992), and as such, they should not be required to give effect to this inequitable practice. While Judge Davis states that he is not “blinking]” at the underlying motivations of CashCall’s transparently tactical decision to withdraw its proof of claim in this case as a means to pretermit the adversary proceeding, post, at 94, his stated position reveals precisely the opposite.
At bottom, it is clear that the bankruptcy court’s order denying CashCall’s motion to withdraw its proof of claim is not before us and that the bankruptcy court still has jurisdiction to decide CashCall’s proof of claim and Moses’ objection to it.

. Judge Gregory argues that ''[t]he non-core litigation will likely require detailed and time-consuming findings regarding CashCall’s conduct in trying to collect on the loan/' post at 85-86, noting that Moses’ complaint alleges that CashCall "has willfully engaged in other and further violations” of the North Carolina Debt Collection Act, "as may be shown through discovery and proved at trial.” But the only factual claims that Moses makes in support of damages are that CashCall "threaten[ed] to draft funds from [her] account on a loan obligation that was illegalthat Cash-Call "ma[de] telephone calls and threaten[ed] to take other actions to collect a debt that was not permitted under law and that CashCall “deceptively represented] ... that the alleged debt owing was a valid debt when such ‘contract for loan’ was ... void ab initio.” (Emphasis added).

. Judge Gregory argues that Gandy is distinguishable because the state-law claims in that case were "peripheral” or "inconsequential relative to the bankruptcy causes of action.” 299 F.3d at 497, 500. But the facts of this case are no different. Here, at the heart of Moses' non-core claim is her allegation that the underlying loan agreement is unenforceable. If the district court agrees with that allegation, it need only resolve one simple legal question: Does the effort to collect an illegal debt inherently violate the North Carolina Debt Collection Act? If the answer to that question is yes, Moses is entitled to monetary damages, and her creditors are entitled to share in her newfound wealth. If the answer is no, Moses’ non-core claim must fail, because Moses has pleaded no facts suggesting that CashCall's debt collection practices were otherwise unfair, deceptive, coercive, or unlawful. Thus, as in Gandy, a core bankruptcy matter — here, the validity of loan agreement — predominates.

. To justify jurisdiction over an unappealed and unappealable order, Judge Davis relies on Dart Cherokee Basin Operating Co., LLC v. Owens, — U.S. -, 135 S.Ct. 547, 190 L.Ed.2d 495 (2014). That case, however, is inapposite. There, after the Tenth Circuit declined to hear a discretionary appeal from an order denying a motion to remand a class action, the Supreme Court found no jurisdictional barrier to granting review of the denial of the leave-to-appeal application. But unlike the closely circumscribed grounds for courts of appeals' jurisdiction in bankruptcy cases, the Supreme Court has jurisdiction to hear any ”[c]ase[] in the courts of appeals.” 28 U.S.C. § 1254(1). As the Court explained, the leave-to-appeal application was at some point "in” the court of appeals, so the Supreme Court had jurisdiction over what the court of appeals did. Dart Cherokee Basin, 135 S.Ct. at 555. Our jurisdiction is not so plenary. Moreover, the Court emphasized not once, but twice, that neither party had questioned its jurisdiction and that it was addressing the issue only at the behest of an amicus curiae. Here, by contrast, neither party believed that the bankruptcy court’s order denying Cash-Call’s motion to withdraw its proof of claim was before this court on appeal.