# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 16th day of May, 2019.*

Present: Chief Justice Lemons, Justice Mims, Justice McClanahan, Justice Powell, Justice Kelsey, Justice McCullough, and Senior Justice Lacy

James River Insurance Company,                                       Appellant,

 against             Record No. 180624
                         Circuit Court No. CL17001049-00

Doswell Truck Stop, LLC, et al.,                                  Appellees.

                                      Upon an appeal from a judgment rendered by the Circuit Court of Hanover County.

Upon consideration of the record, briefs, and argument of counsel, the Court is of the opinion that there is reversible error in the judgment of the circuit court.

Doswell Truck Stop, LLC ("DTS") operates a truck stop in Doswell, Virginia. The truck stop premises include a gas station/convenience store, a hotel, a repair garage/truck wash, and approximately 24 acres of vacant land. At all times relevant to the present case, DTS was insured under a Commercial General Liability Policy (the "Policy"), issued by James River Insurance Company ("James River"). The Policy contained an Absolute Auto, Aircraft and Watercraft Exclusion endorsement (the "Auto Exclusion") which precludes coverage for bodily injury and property damage arising out of the maintenance of any "auto."[1] The Auto Exclusion specifically stated:

---

[1] The policy defines the term "auto" as:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading". Use also includes the handling and placing of persons by an insured into, onto or from an aircraft, "auto" or watercraft.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

In June 2016, James T. Smith ("Smith") filed a personal injury lawsuit against DTS for injuries he allegedly suffered as a result of a tire explosion. According to Smith's complaint, he sought to have DTS repair or replace a tire on his tractor-trailer. During the course of the repair, a DTS employee invited Smith into the garage area. The tire was secured within an OSHA-compliant steel cage designed for inflating damaged truck tires. However, while Smith was present, the DTS employee over-inflated the tire, causing it to explode and injure Smith.

DTS filed an insurance claim with James River, but James River denied coverage on the basis that DTS's claim was precluded by the Auto Exclusion. DTS filed a declaratory judgment action against James River, seeking a determination of whether the Policy covered Smith's injury. DTS and James River both filed motions for summary judgment. In its motion, DTS argued that the term "maintenance" in the Auto Exclusion was ambiguous because it is subject to two meanings: (1) regular repair operations and (2) a possessory interest other than ownership or use. DTS asserted that both definitions of maintenance are equally possible in the context of the Auto Exclusion and, therefore, the circuit court should adopt the construction that is most likely to effectuate coverage. Alternatively, DTS contended that an independent basis existed for coverage under the Policy. Specifically, DTS claimed that Smith's complaint contained a premises liability claim that would not be precluded by the Auto Exclusion.

The circuit court ruled in favor of DTS. In a letter opinion, the circuit court determined that the Auto Exclusion was ambiguous with respect to the meaning of "maintenance" of an auto. It also adopted DTS's argument on premises liability as an alternative basis for granting

However, "auto" does not include "mobile equipment".

2

summary judgment. The circuit court further awarded DTS $7,000 in attorneys' fees as compensation for the fees DTS had already incurred in defending Smith's claim.

1. Ambiguity of the word "Maintenance"

James River first assigns error to the circuit court's determination that the term "maintenance," as used in the Policy, is ambiguous. In determining whether a term is ambiguous, a court cannot look at the term in isolation; it must look at the term in the context of the entire contract. *See Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 180 (2016) (recognizing that the proper interpretation of a contract requires a court to avoid placing emphasis on individual terms "wrenched from the larger contractual context"). In other words, a contractual term is not ambiguous merely because it is subject to multiple interpretations when viewed in isolation. Rather, a contractual term is ambiguous when it is subject to multiple interpretations in view of the entire contractual context.

> Under Virginia law, conflicting interpretations reveal an ambiguity only where they are reasonable. A "reasonable" or "fairly claimed" interpretation is one of two competing interpretations that are "equally possible" given the text and context of the disputed provision.

*Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 29 (2019) (citations omitted).

Notwithstanding the fact that "maintenance" is the term at issue in the present case, DTS focuses its argument on the meaning of its root word: maintain. As DTS correctly notes, the term "maintain" is used throughout the Policy in a manner indicating that it should be interpreted as meaning "to keep." According to DTS, this interpretation of "maintain" informs the interpretation of "maintenance."

Although the word "maintenance" is derived from the word "maintain," the terms are used differently throughout the Policy and, therefore, can have distinct meanings. Notably, the Policy's definition of "mobile equipment" uses both terms in a manner that clearly indicates they have different meanings. For example, "mobile equipment," as used in the Policy, may refer to "[v]ehicles *maintained* for use solely on or next to premises you own or rent" or "[v]ehicles . . . *maintained* primarily to provide mobility" to certain permanently mounted equipment. (Emphasis added.) This language supports DTS's argument, as the term "maintained" is used in a manner indicating that the term means "kept," e.g., vehicles *maintained*

3

for a specific purpose or use. At the same time, however, the Policy also states that "mobile equipment" does not refer to "self-propelled vehicles with . . . types of permanently attached equipment . . . designed primarily for . . . [r]oad *maintenance*." (Emphasis added.) The interpretation of "maintenance" asserted by DTS would mean that this language refers to equipment primarily designed for a possessory interest in roads other than ownership or use. Such an interpretation makes little sense and, therefore, cannot be an "equally possible" interpretation of the term "maintenance." Rather, the more reasonable interpretation would be that this language referred to equipment primarily designed for the regular repair of roads.

A review of the Policy demonstrates that, of the two competing interpretations of "maintenance," only one can reasonably be applied to every instance of the term in the Policy. Specifically, "regular repair operations" is the only interpretation of "maintenance" that can be reasonably applied to every instance of the term in the Policy, whereas the alternative interpretation offered by DTS can only reasonably be applied to approximately half of the instances in which the term is used. Accordingly, the term is not ambiguous.

2. Premises Liability

James River next argues that the circuit court erred in ruling that Smith's claim asserted a premises liability claim which provided an independent basis for potential liability that is not precluded by the Auto Exclusion. James River points out that the Auto Exclusion precludes coverage for bodily injury "*arising out* of the ownership, maintenance, use or entrustment" of a vehicle. (Emphasis added.) According to James River, regardless of the nature of the claim brought by Smith, the fact remains that his injury arose out of maintenance of a vehicle and, therefore, coverage is precluded by the Auto Exclusion.

In the context of an insurance policy, the phrase "arising out of the ownership, maintenance or use" of a vehicle is broad in its scope. The Court has recognized that the "ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense" to fall within the scope of the "arising out of" language. *State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 500 (1984). Rather, such language only requires that a reasonable causal connection exist between the ownership, maintenance or use of the automobile and the injury. *Id.*

In the present case, DTS relies heavily on language in Smith's complaint indicating that his injuries were the result of a DTS employee negligently permitting him to enter a dangerous

4

location. Smith's complaint, however, specifically alleges that his injury occurred when a DTS employee "over inflated the tire so as to cause the tire to explode." Thus, regardless of whether allowing Smith into a dangerous location was a proximate cause of his injuries, the fact remains that a significant causal connection exists between the maintenance on the tire and Smith's injuries. As such, Smith's injury arose out of the maintenance of a vehicle and the Auto Exclusion applies. Accordingly, the trial court erred in ruling that an independent basis existed for coverage under the Policy.

### 3. Award of Costs

James River argues that the circuit court erred in awarding DTS compensation for the fees it had incurred in defending Smith's claim. Such compensation was premised on the circuit court's determination that James River had a duty to defend DTS under the Policy. As noted above, however, the Auto Exclusion precludes coverage for Smith's injury under the Policy. Accordingly, there was no basis for such an award and, therefore, the award must be reversed.

For the foregoing reasons, the decision of the circuit court is reversed and final judgment is entered declaring that the Auto Exclusion precludes coverage of Smith's injuries under the Policy.

This order shall be published in the Virginia Reports and shall be certified to the Circuit Court of Hanover County.

A Copy,

Teste:

Douglas B. Robelen, Clerk

5