**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1853**

---

ELEGANT MASSAGE, LLC, d/b/a Light Stream Spa, on behalf of itself and all others similarly situated,

Plaintiff - Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY,

Defendants - Appellants.

------------------------------

AMERICAN PROPERTY CASUALTY INSURANCE ASSOCIATION; AMERICAN TORT REFORM ASSOCIATION; NATIONAL ASSOCIATION OF MUTUAL INSURANCE COMPANIES,

Amici Supporting Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:20−cv−00265−RAJ−RJK)

---

Argued:  September 20, 2023                    Decided:  March 8, 2024

---

Before DIAZ, Chief Judge, WYNN, Circuit Judge, and KEENAN, Senior Circuit Judge.

---

Reversed and remanded with instructions by published opinion.  Senior Judge Keenan wrote the majority opinion, in which Chief Judge Diaz joined.  Judge Wynn wrote an opinion concurring in the judgment in part and dissenting in part.

1

**ARGUED:** Christina Guerola Sarchio, DECHERT LLP, Washington, D.C., for Appellants. Melissa L. Yeates, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania, for Appellee. **ON BRIEF:** Douglas W. Dunham, Bert L. Wolff, DECHERT LLP, New York, New York; Theodore I. Brenner, Alexander S. de Witt, FREEBORN & PETERS LLP, Richmond, Virginia; Joseph A. Cancila, Jr., James P. Gaughan, RILEY SAFER HOLMES & CANCILA LLP, Chicago, Illinois, for Appellants. Joseph H. Meltzer, Tyler S. Graden, Jordan Jacobson, KESSLER TOPAZ MELTZER & CHECK, LLP, Radnor, Pennsylvania; William H. Monroe, Jr., Marc C. Greco, Kip A. Harbison, Michael A. Glasser, GLASSER AND GLASSER, P.L.C., Norfolk, Virginia; James E. Cecchi, Lindsey H. Taylor, Donald A. Ecklund, Zachary A. Jacobs, CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C., Roseland, New Jersey, for Appellee. Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut, for Amici American Property Casualty Insurance Association and National Association of Mutual Insurance Companies. H. Sherman Joyce, Lauren Sheets Jarrell, AMERICAN TORT REFORM ASSOCIATION, Washington, D.C.; Steven P. Lehotsky, Scott A. Keller, Jeremy Evan Maltz, Washington, D.C., Katherine C. Yarger, LEHOTSKY KELLER LLP, Denver, Colorado, for Amicus American Tort Reform Association.

BARBARA MILANO KEENAN, Senior Circuit Judge:

In this appeal of a class action certification order, we consider a complaint alleging breach of contract and other related claims. State Farm Mutual Automobile Insurance Company (State Farm) appeals the district court's certification of a class of businesses that was denied insurance coverage when several Virginia executive orders required full or partial closure of those businesses during the COVID-19 pandemic. State Farm also asks, based on our recent decision in *Uncork & Create LLC v. Cincinnati Insurance Co.*, 27 F.4th 926 (4th Cir. 2022), which similarly addressed a question of commercial property insurance coverage during the COVID-19 pandemic, that we exercise pendent appellate jurisdiction to consider alleged legal error in the district court's denial of State Farm's motion to dismiss. Because the immediately appealable issue of class certification and the district court's decision denying State Farm's motion to dismiss are "so interconnected" as to require concurrent review, we exercise pendent appellate jurisdiction to consider the district court's denial of the motion to dismiss. After considering the precedential effect of *Uncork* on the district court's decision, we reverse the district court's judgment and remand the case with instructions that the court dismiss the entire case.

I.

In March 2020, Elegant Massage, LLC, d/b/a Light Stream Spa (Elegant Massage), operated a massage parlor in Virginia Beach, Virginia. On March 16, 2020, Elegant Massage voluntarily closed to "protect its employees and the public" from the spread of the COVID-19 virus. The Governor of Virginia and the Virginia State Health

3

Commissioner declared a public health emergency four days later, and on March 23, 2020, the Governor issued an executive order directing the closure of "all public access" to recreational and entertainment businesses, including spas and massage parlors. In May 2020, the Governor issued amended executive orders that allowed "massage centers" to reopen subject to certain conditions.[1]

On the day Elegant Massage voluntarily closed, it filed a claim for loss of business income and extra expenses under its "all risk" commercial property insurance policy issued by State Farm (the policy). The policy, which was in effect from July 22, 2019 through July 22, 2020, covered loss or damage to the premises operated by Elegant Massage (the covered property). This coverage included "loss of income" sustained due to the "suspension" of operations during any "period of restoration," as well as "extra expenses" incurred during the same period. The "period of restoration" was defined in the policy as beginning "immediately after the time of accidental direct physical loss caused by any Covered Cause Of Loss at the [covered property]," and ending on the earlier of the date when the covered property "should be repaired, rebuilt[,] or replaced with reasonable speed and similar quality," or when "business is resumed at a new permanent location."

To qualify for "loss of income" coverage, the policy required that the "suspension" be caused by "accidental direct physical loss" to the covered property, and that the loss be

---

[1] In this opinion, we refer generally to the "executive orders" issued by the Governor during the period of March 23, 2020 through June 30, 2020, to which the district court referred in its class certification order.

4

"covered," that is, not subject to any exclusions.[2]  As relevant to the present case, the policy excluded coverage for any loss caused by "virus" (the virus exclusion).

On March 26, 2020, State Farm denied Elegant Massage's claim for loss of business income.  State Farm explained that Elegant Massage voluntarily had closed on March 16, 2020, before any Virginia executive order was in place, that there was no known damage to the covered property due to COVID-19, and that, because of the virus exclusion, the suspension of Elegant Massage's business operations was not a "covered" cause of loss under the policy.

Following State Farm's denial of coverage, Elegant Massage filed a putative class action complaint against State Farm on behalf of itself and similarly situated individuals and entities, seeking a declaratory judgment that the virus exclusion did not apply and asserting claims for breach of contract and breach of the duty of good faith and fair dealing. As the basis for its claims, Elegant Massage alleged that the executive orders requiring full or partial closure of Elegant Massage and the other businesses in the putative class resulted in covered losses under the policy.  State Farm moved to dismiss Elegant Massage's first amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Elegant Massage had not alleged "accidental direct physical loss" to the covered property, that Elegant Massage had not alleged any loss requiring a "period of restoration," and that exclusions in the policy barred Elegant Massage's claims.

---

[2] The term "suspension" included a "partial slowdown" or "complete cessation" of business activities.

5

The district court rejected State Farm's arguments, holding that the phrase "direct physical loss" was ambiguous under Virginia law, and that it was plausible that such loss "could mean" that property is "uninhabitable, inaccessible, or dangerous" to use because of "intangible, or non-structural sources." The court did not address State Farm's argument regarding the "period of restoration," and held that the virus exclusion did not bar Elegant Massage's claims. The court thus denied State Farm's motion to dismiss.[3]

State Farm moved to amend the court's denial of the motion to dismiss, or for certification of interlocutory appeal under 28 U.S.C. § 1292(b). The district court summarily denied these requests.

Proceeding under Rule 23(b)(3), Elegant Massage moved for class certification.[4] In addition to determining whether the requirements of Rule 23(a) were satisfied, including "commonality" of the class members' claims, the district court also was required to determine under Rule 23(b)(3) whether "questions of law or fact common to the members of the class predominate[d] over any questions affecting only individual members" (the predominance requirement). *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir.

---

[3] The district court granted State Farm's motion in part, holding that the policy did not cover Elegant Massage's voluntary closure from March 16, 2020 until March 22, 2020, and that the policy's Civil Authority Coverage provision did not apply to Elegant Massage's claims. Because these holdings granting in part State Farm's motion are not relevant to this appeal, we refer in this opinion to the district court's "denial" of State Farm's motion to dismiss.

[4] Previously, in ruling on Elegant Massage's first motion to certify a class under Rule 23(b)(2), the district court sua sponte certified a class under Rule 23(b)(3). On appeal, we reversed the court's sua sponte certification, expressing no opinion on the appropriateness of certification under Rule 23(b)(3), but explaining that the district court abused its discretion by certifying a class under that provision without a request to do so.

6

2004). The district court held that each required factor under Rule 23(a) and Rule 23(b)(3) was satisfied, and granted Elegant Massage's class certification motion (the class certification order). The certified class included:

> All persons or entities in the Commonwealth of Virginia with a Businessowners insurance policy issued by State Farm on Form CMP-4100, including a Loss of Income and Extra Expense endorsement . . . in effect at any time between March 23, 2020 and June 30, 2020 (the "Closure Period"), that were subject to a partial or full business suspension under the Orders and submitted claims for business income losses and/or extra expenses incurred during the Closure Period that were denied by Defendants.

State Farm timely petitioned this Court for permission to appeal the class certification order under Federal Rule of Civil Procedure 23(f). We granted State Farm's petition.

## II.

On appeal, State Farm relies heavily on our decision in *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926 (4th Cir. 2022), which we issued two weeks after State Farm filed its notice of appeal in the present case. Before turning to the issues presently before us, we describe the factual background and our holding in *Uncork*.

In March 2020, Uncork and Create LLC (Uncork) operated a "creative events" business at two art studios in West Virginia. 27 F.4th at 928. After the Governor of West Virginia issued an executive order that required non-essential businesses in West Virginia to close temporarily during the COVID-19 pandemic (the closure order), Uncork sought coverage for lost business income under its commercial property insurance policy. *Id.* at 928–29. The policy, issued by The Cincinnati Insurance Company, covered property losses

7

resulting from a covered cause of loss, namely, "direct," "accidental physical loss or accidental physical damage" (the property loss provision), as well as business income losses for expenses incurred during the "period of restoration" (the business income loss provision). *Id.* at 929. The "period of restoration" was defined under the policy as beginning when a covered cause of loss occurred, and as ending on the earlier date of when the property "should be repaired, rebuilt[,] or replaced with reasonable speed and similar quality," or when business "is resumed at a new permanent location." *Id.*

Under established principles of West Virginia law, we held that the plain meaning of the disputed language in the policy, namely, "physical loss" or "physical damage" to a defined premises, required material destruction or material harm to the covered premises. *Id.* at 932. We explained that any other interpretation of these phrases would render meaningless the pre-condition of a "period of restoration," which contemplated a need to repair, rebuild, or replace property, or to expend time securing a new, permanent property. *Id.*

Applying this unambiguous policy language to Uncork's claims, we held that "neither the [West Virginia] closure order nor the COVID-19 virus caused present or impending material destruction or material harm that physically altered the covered property requiring repairs or replacement so that they could be used as intended." *Id.* at 933. Thus, we concluded that the insurance policy's coverage for business income loss did not apply to Uncork's claim for financial losses while the closure order was in effect, and we affirmed the district court's judgment dismissing Uncork's putative class action

8

complaint under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 933–34. With this holding in mind, we turn to consider State Farm's arguments on appeal.

III.

State Farm challenges the class certification order, arguing that the district court abused its discretion in finding that the plaintiffs satisfied the commonality and predominance requirements under Rule 23. State Farm submits that this Court has appellate jurisdiction to consider this issue under Rule 23(f). Separately, relying on our decision in *Uncork*, State Farm argues that the district court committed legal error by denying State Farm's motion to dismiss and by holding that Elegant Massage suffered "accidental direct physical loss" under the policy due to the implementation of the executive orders. State Farm urges us to review the district court's denial of the motion to dismiss under the doctrine of pendent appellate jurisdiction, a judicially-created, discretionary exception to the final judgment rule. *See Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006).

In response, Elegant Massage contends that it satisfied the requirements of commonality and predominance under Rule 23, and separately maintains that this Court is not permitted to review the district court's denial of the motion to dismiss under pendent appellate jurisdiction, an exception of "limited and narrow application." *Id.* at 475. According to Elegant Massage, State Farm's argument addressing *Uncork* and the district

9

court's motion to dismiss is an "improper attempt to prematurely appeal" the district court's opinion denying State Farm's motion to dismiss.

## A.

We first address whether we have jurisdiction to consider the district court's denial of State Farm's motion to dismiss. *Williamson v. Stirling*, 912 F.3d 154, 168 (4th Cir. 2018) (describing our "obligation" to verify the existence of appellate jurisdiction (citation omitted)). Ordinarily, federal courts of appeals have jurisdiction only over "final decisions" from the United States district courts. 28 U.S.C. § 1291. Rule 23(f) provides an exception to this rule by allowing an appellate court to consider an interlocutory appeal from an order granting or denying class certification. *See Microsoft Corp. v. Baker*, 582 U.S. 23, 30–31 (2017). Because we granted State Farm's petition under Rule 23(f), we have appellate jurisdiction to consider State Farm's arguments challenging the class certification order. But we lack jurisdiction under Rule 23(f) to consider the district court's denial of State Farm's motion to dismiss. *Cf. Rux*, 461 F.3d at 474 (holding that the denial of a motion to dismiss is not a "final" order).

Under the doctrine of pendent appellate jurisdiction, however, we may review an issue not otherwise subject to immediate appeal when the issue is "so interconnected" with an issue properly before us as to "warrant concurrent review." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 364 (4th Cir. 2014) (quoting *Rux*, 461 F.3d at 475). We exercise this jurisdiction sparingly and do so only if either (1) "an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal," or (2) "review of a jurisdictionally insufficient issue is 'necessary to ensure meaningful review' of an

immediately appealable issue." *Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013) (citation omitted).

Under the first test stated above, separate rulings are "inextricably intertwined" when "the same specific question will underlie both the appealable and the non-appealable order, such that resolution of the question will necessarily resolve the appeals from both orders at once." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (quoting *Scott*, 733 F.3d at 111). Under the second test, review of a pendent issue will be necessary to ensure meaningful review of an immediately appealable issue "if resolution of the pendent issue is necessary, or essential in resolving the immediately appealable issue." *Id.* (citation omitted). As explained below, we conclude that the second test for pendent appellate jurisdiction is satisfied here.

Usually, an order denying a motion to dismiss and an order granting a class certification request will address distinct issues. In reviewing a motion to dismiss, the court considers the merits of the allegations in the plaintiff's complaint to determine whether the complaint "state[s] a claim to relief that is plausible on its face." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citation omitted). In contrast, in a class certification analysis, the court determines whether the Rule 23 requirements have been satisfied without considering whether the proposed class is likely to prevail on the merits. *See Gariety*, 368 F.3d at 362, 366 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78

(1974)). In the present case, however, these two orders, the denial of the motion to dismiss and the class certification order, are "so interconnected" as to require concurrent review.

In its opinion denying State Farm's motion to dismiss, the district court held that the phrase "direct physical loss" could mean that the covered property is "uninhabitable, inaccessible, or dangerous to use because of intangible, or non-structural, sources." Thus, even though Elegant Massage's covered property had not suffered a "structural form of direct physical loss" or a "distinct, demonstrable, or physical alteration" to its structure, the district court held that Elegant Massage could have experienced a "direct physical loss" because the executive orders rendered the covered property "uninhabitable, inaccessible, and dangerous" due to the risk of spreading the COVID-19 virus. After further holding that no exclusions otherwise precluded coverage for the time when the executive orders were in effect, the court denied in relevant part State Farm's motion to dismiss.

The district court's holding regarding the meaning of "direct physical loss" guided its later determination that certain Rule 23(b)(3) requirements had been satisfied. In analyzing the Rule 23(b)(3) predominance requirement, for example, the court initially cited its opinion denying State Farm's motion to dismiss and reiterated its prior holding that Elegant Massage had suffered "covered" losses due to the executive orders and, thus, had pleaded sufficient facts to state a plausible claim for relief. Relying on its analysis of Elegant Massage's individual claims as a model of the proof required for the other putative class members' claims, the court held that other similarly situated class members would need to show "substantially similar" facts, namely, that they held identical State Farm

12

policies, that their businesses suspended operations under the executive orders, and that they filed claims for the resulting losses that State Farm denied.

The threshold merits question addressed in the district court's order denying State Farm's motion to dismiss thus was integral to the district court's later conclusion that the class members could prove their claims through evidence common to the class. And, critically, both the district court's denial of State Farm's motion to dismiss and the resulting assumptions underlying the class certification order conflict with our later-issued precedent squarely addressing the interpretation of nearly identical language in another commercial property insurance policy. *See generally Uncork*, 27 F.4th 926; *see also Scott*, 733 F.3d at 111 (exercising pendent appellate jurisdiction over the district court's denial of leave to amend when the court's interpretation of an intervening Supreme Court decision resolved both the appealable class certification decision and the non-appealable denial of leave to amend).

The district court did not have the benefit of our analysis in *Uncork* when it denied State Farm's motion to dismiss, nor when it granted Elegant Massage's motion for class certification. On appeal, however, we cannot meaningfully review the class certification order, which relies in part on the legal conclusions reached in the district court's denial of the motion to dismiss, while ignoring this new decision that is directly applicable to the case before us. *See Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 783 F.3d 976, 980 (4th Cir. 2015) (describing "a court's fundamental obligation to ascertain controlling law"). Because our resolution of the legal question of coverage under the policy is essential to our analysis of the class certification order, and because intervening precedent bears directly

13

on that question, we exercise pendent appellate jurisdiction to review the district court's denial of State Farm's motion to dismiss.

B.

Turning to the merits of State Farm's appeal, we begin with State Farm's argument relying on *Uncork* that the district court committed legal error when it determined that the relevant executive orders caused "accidental direct physical loss" to the covered property. In response, Elegant Massage asserts that *Uncork* does not govern the outcome of this case because, there, we addressed a different insurance policy and applied West Virginia, rather than Virginia, law. We disagree with Elegant Massage's argument.

We review de novo the district court's denial of the motion to dismiss. *Dyer v. Smith*, 56 F.4th 271, 276 (4th Cir. 2022). Initially, we observe that the principles of West Virginia law that we applied in *Uncork* mirror the principles of Virginia law that we apply in the present case.[5] *Compare Uncork*, 27 F.4th at 931, *with TravCo Ins. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012), *James River Ins. v. Doswell Truck Stop, LLC*, 827 S.E.2d 374, 376 (Va. 2019), *and Gov't Emps. Ins. v. Moore*, 580 S.E.2d 823, 828–29 (Va. 2003).

Like in *Uncork*, we are required to interpret the policy "in accordance with the intention of the parties gleaned from the words they have used in the document." *Travco*, 736 S.E.2d at 325. We consider each term in "the holistic context of the word within the

---

[5] *See Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules."). We hold, and the parties agree, that Virginia law applies to the interpretation of the policy.

14

instrument," with each "word, clause, and provision" of the policy construed together to harmonize, when reasonably possible, any potentially conflicting words or terms. *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 354–55 (Va. 2019). If the meaning of a term is unambiguous, then we apply its plain meaning. *TravCo*, 736 S.E.2d at 325. But if a term is subject to multiple interpretations, we construe the ambiguous policy language in favor of coverage and against the insurer. *Doswell Truck Stop*, 827 S.E.2d at 376; *Moore*, 580 S.E.2d at 829.

We turn to consider the language of the present policy, which requires as conditions of coverage "accidental direct physical loss" and a "period of restoration." The parties dispute whether the closures mandated by the executive orders qualified as "direct physical loss" under the policy. In *Uncork*, we relied on the plain meaning of the phrase "physical loss" to determine that, with reference to a defined premises, that phrase means "material destruction" or "material harm." 27 F.4th at 932 (citing *Webster's Third New Int'l Dictionary* 1338, 1706 (2002)). We also held that the policy's requirement of a "period of restoration," which is materially identical to the period of restoration requirement in the present policy, further demonstrated the pre-condition of a material alteration to the property. *Id.*

Applying these same principles to the similarly "plain and unambiguous" policy language here, we hold that "direct physical loss" under the policy requires "present or impending material destruction or material harm." *Id.* at 933. Because the executive orders did not cause such harm and did not physically alter the covered property to require repair, rebuilding, replacement, or relocation to another property, we hold that the policy's

15

coverage for loss of income and extra expenses does not apply to Elegant Massage's claim

based solely on the closure mandated by those orders.[6] We therefore hold that the district

court erred when it denied State Farm's motion to dismiss the complaint.

As a result of this conclusion, we also hold that there is no basis for class

certification, and do not reach State Farm's other arguments on appeal regarding the class

certification order. *Cf. Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 268 n.4 (4th

Cir. 2002) (affirming denial of class certification when the plaintiff failed to state a claim,

and "all other similarly situated plaintiffs would likewise fail to state a claim"); *cf. also*

*Curtin v. United Airlines, Inc.*, 275 F.3d 88, 93 (D.C. Cir. 2001) (declining to reach the

---

[6] Our conclusion is not altered by Elegant Massage's reliance on *US Airways, Inc. v. Commonwealth Ins.*, in which a Virginia trial court held that the "civil or military intervention provision" in the plaintiff's policy, "interpret[ed] on its face," did not require as a condition of coverage "damage" to the plaintiff's property. 64 Va. Cir. 408, 2004 WL 1094684, at *5 (2004). Such a provision is not at issue in the present appeal. Nor are we persuaded by Elegant Massage's contention that the Virginia executive orders are materially distinct from the West Virginia closure order in *Uncork* because the West Virginia order did not "explicitly force[]" businesses to close. Initially, we observe that the West Virginia closure order, like the Virginia executive orders, directed certain businesses to "temporarily cease" operations. *Uncork*, 27 F.4th at 929. Moreover, any factual distinction regarding the scope of the West Virginia closure order or the Virginia executive orders would not affect our conclusion that, based on the unambiguous policy language, the executive orders did not result in material destruction or material harm to the covered property.

Finally, Elegant Massage cites an internal State Farm document, which provided that if damaged property is owned by someone other than the insured, loss of income coverage may apply even without "damage to [the] covered or insured property." Not only is that limited circumstance inapplicable to the present case but, also, the policy language at issue here is unambiguous, and, thus, we "need not look beyond the plain meaning of" that language to determine whether Elegant Massage suffered a covered loss. *TravCo*, 736 S.E.2d at 326.

class certification question when the district court properly granted summary judgment on the merits).[7]

IV.

Exercising our pendent appellate jurisdiction, we conclude that the district court erred when it denied State Farm's motion to dismiss. Moreover, the legal error animating the court's denial of the motion to dismiss directly affects the outcome of the court's class certification order. Thus, we reverse the district court's denial of State Farm's motion to dismiss, reverse the class certification order, and remand the matter to the district court with instructions that it dismiss the entire case.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*

---

[7] Additionally, because we hold that the policy does not cover Elegant Massage's claimed business losses, we need not address whether the virus exclusion otherwise would preclude coverage.

WYNN, Circuit Judge, concurring in the judgment in part and dissenting in part:

In this appeal, State Farm has asked us to review two issues: one related to the district court's class certification order, and the other related to the district court's order denying State Farm's motion to dismiss. The majority and I agree that Congress has permitted us to review the class certification order but has not provided a statutory basis on which we may review the denial of the motion to dismiss. Nonetheless, the majority concludes it is necessary to exercise pendent appellate jurisdiction over the denial of the motion to dismiss and resolve the appeal by deciding that the named plaintiff's claim is meritless.

In exceedingly rare circumstances, we may exercise pendent appellate jurisdiction to review an issue even though Congress has not otherwise permitted us to do so. However, I do not agree with the majority's conclusion that we must reach the denial of the motion to dismiss to resolve this appeal. We can—and should—reach the same outcome on the class certification issue with no mention of the motion to dismiss. By addressing the motion to dismiss even though it is not essential to a ruling on class certification, the majority opinion does not properly account for the limitations Congress has set on our review of interlocutory decisions. I therefore concur in the judgment in part and, very respectfully, dissent in part.

I.

A.

It is a basic tenet of federal judicial review that we exercise jurisdiction only to the extent permitted by Congress and the Constitution. *Constantine v. Rectors & Visitors of*

*George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). "Provided it does not violate other constitutional provisions, Congress is widely seen to enjoy broad control over the jurisdiction of the federal courts," including depriving us of jurisdiction. *Appalachian Voices v. U.S. Dep't of the Interior*, 78 F.4th 71, 78 (4th Cir. 2023).

"Ordinarily, federal courts of appeals have jurisdiction only over 'final decisions' from the United States district courts." Majority Op. at 10 (quoting 28 U.S.C. § 1291). And, most of the time, "a denial of a motion to dismiss constitutes an interlocutory order that is not immediately appealable." *District of Columbia v. Trump*, 959 F.3d 126, 130 (4th Cir. 2020) (en banc). By contrast, "an order granting or denying class-action certification" *is* immediately appealable, with the permission of the appellate court, under Federal Rule of Civil Procedure 23(f). When we exercise jurisdiction pursuant to Rule 23(f), however, our inquiry is limited to whether the district court "misapplie[d] the requirements of Rule 23." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014).

In doing so, we may occasionally consider the underlying merits "to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Id.* at 358 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). But our inquiry can go no further: "Rule 23 does not give . . . courts a 'license to engage in free-ranging merits inquiries at the certification stage.'" *Id.* (quoting *Amgen*, 568 U.S. at 466).

Congress has also granted us authority to conduct interlocutory review of otherwise unreviewable orders, such as the denial of a motion to dismiss, in a thin sliver of cases—those that fall within the ambit of 28 U.S.C. § 1292(b). Under that statute, "[w]hen a district

19

judge" issues an interlocutory order in a civil case and is "of the opinion" that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge may certify the question for appellate review. 28 U.S.C. § 1292(b). At that point, if the aggrieved party timely applies to the Court of Appeals, the appellate court may then—and only then—"permit an appeal to be taken from such order." *Id.*

Given the difference between the district court's view of Virginia contract law and that of the majority, this case may have been a good candidate for utilizing the process outlined in § 1292(b). State Farm certainly thought so when, after the district court denied its motion to dismiss, it moved for the district court to certify the central contract-interpretation issues for immediate appeal. But the district court declined to certify the appeal. So, we have no statutory authority to review the denial of the motion to dismiss at this stage of the litigation.

## B.

That does not end the jurisdictional inquiry, however. Although Congress has indicated, through the statutory regime described above, that it does not want us to undertake interlocutory review of orders like the district court's denial of the motion to dismiss, sometimes we cannot meaningfully review an issue over which Congress *has* provided us jurisdiction if we do not address an otherwise unreviewable issue. In those circumstances, the "judicially-created, discretionary exception" of pendent appellate jurisdiction comes into play. *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006).

20

"Pendent appellate jurisdiction is an exception of limited and narrow application driven by considerations of need, rather than of efficiency." *Id.* The Supreme Court has emphasized that if courts take a "'liberal' or 'flexible' approach" to the doctrine, they risk "circumvent[ing]" the aforementioned limits on interlocutory review that Congress has imposed. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 n.5 (1995). In other words, through § 1292(b), Congress "chose to confer on district courts first line discretion to allow interlocutory appeals. If courts of appeals had discretion to append to a[n ]authorized appeal . . . further rulings of a kind neither independently appealable nor certified by the district court, then the two-tiered arrangement § 1292(b) mandates would be severely undermined." *Id.* at 47 (footnote omitted).

Pendent appellate jurisdiction therefore does not permit us to address merits issues that we want, but do not need, to resolve. Instead, we may exercise this form of jurisdiction only "(1) when an issue is 'inextricably intertwined' with a question that is the proper subject of an immediate appeal; or (2) when review of a jurisdictionally insufficient issue is '*necessary* to ensure meaningful review' of an immediately appealable issue." *Rux*, 461 F.3d at 475 (emphasis added) (quoting *Swint*, 514 U.S. at 50–51). Because the majority exercises pendent appellate jurisdiction via the second of these avenues, I focus my analysis there.

"[R]eview of a pendent issue will be necessary to ensure meaningful review of an immediately appealable issue if resolution of the pendent issue is *necessary*, or *essential*, in resolving the immediately appealable issue." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (emphases added) (quoting *Ealy v. Pinkerton Gov't Servs.*, 514 F.

21

App'x 299, 309 (4th Cir. 2013) (unpublished but orally argued)). And, importantly, when a pendent issue merely *could* foreclose our review of the issue over which we already have appellate jurisdiction, it is not "necessary" for our review. *See id.* at 168 ("While a standing analysis *could* foreclose the need to address the immunity defense if [the plaintiff] does indeed lack standing, that is not the pendent jurisdiction test."); *Ealy*, 514 F. App'x at 310 ("Although analysis of the [pendent issue] *could* ultimately foreclose the need for analysis of the [class certification issue], resolution of the [pendent] issue is not *necessary* to review the class certification issue."); *Evans v. Chalmers*, 703 F.3d 636, 658 (4th Cir. 2012) (stating that there was no basis for exercising pendent appellate jurisdiction where the core issue on appeal "did not *require* any evaluation of" the pendent issue (emphasis added)).

In this case, the majority opinion concludes that its review of the denial of the motion to dismiss is necessary to ensure meaningful review of the class-certification decision. I disagree. Because, as I explain below, we *can* reach the same conclusion on class certification without analyzing the order on the motion to dismiss, the aforementioned limitations on our jurisdiction mean that we *must* decline to exercise pendent appellate jurisdiction over the latter order.[1]

---

[1] If I believed we could reach the merits, I may well have signed onto the majority's analysis. But because I believe we lack jurisdiction to do so and my opinion would therefore be purely advisory, I decline to state any conclusive view on the issue.

22

II.

A.

As in any appeal permitted under Rule 23(f), the class-certification issue in this appeal asks us to determine whether the proposed class's claims should be judged together, regardless of whether they should be judged meritorious. In my view, the class must be decertified because numerous individual inquiries would be required to determine whether State Farm breached its contract with each class member.

The general requirements for class certification are familiar. A proposed class must meet the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23; *see also EQT*, 764 F.3d at 357. Once those are met, "the class action must [also] fall within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).

Here, Elegant Massage moved for, and the district court granted, class certification pursuant to Rule 23(b)(3). *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-265, 2022 WL 433006 (E.D. Va. Feb. 11, 2022). That rule imposes two additional requirements: predominance and superiority. Fed. R. Civ. P. 23; *see also EQT*, 764 F.3d at 357. I focus on predominance because it is dispositive here.

Predominance mandates that common questions "predominate over any questions affecting only individual members" of the proposed class. Fed. R. Civ. P. 23(b)(3). Common questions need not be dispositive of the entire litigation. *Gunnells*, 348 F.3d at 427–28. For example, it may be appropriate to certify a class despite the need for individual damages determinations. *Id.*

23

But "while the need for individualized proof of damages does not necessarily preclude class certification so long as common issues continue to predominate over individual issues, it is impermissible to determine damages on a classwide basis in order to facilitate class treatment of a case when the governing law requires individualized proof of damages." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). And "the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability." *Id.*

That said, cases, like this one, that "involv[e] form contracts often lend themselves to class treatment." *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 255 (5th Cir. 2020); *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010) ("[A]ctions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action."). This is because when contract language is constant across the class, an interpretation of a relevant provision applies equally to all class members.

But alleged breaches of standardized contracts do not invariably give rise to class actions, and courts properly deny class certification under Rule 23(b)(3) even in form-contract cases "where numerous individual inquiries [are] required to determine whether a breach of the contract could be found." *Spagnola*, 264 F.R.D. at 98; *e.g., Spotswood v. Hertz Corp.*, No. RDB-16-1200, 2019 WL 498822, at *9 (D. Md. Feb. 7, 2019) (denying class certification despite uniform contract where claims required a "case-by-case" inquiry

24

into whether fees charged by car rental company to fix damaged vehicles were reasonable). That is the case here.

The district court granted class certification under Rule 23(b)(3), defining the class as

> [a]ll persons or entities in the Commonwealth of Virginia with a Businessowners insurance policy issued by State Farm on Form CMP-4100, including a Loss of Income and Extra Expense endorsement . . . in effect at any time between March 23, 2020 and June 30, 2020 (the "Closure Period"), that were subject to a partial or full business suspension under the Orders and submitted claims for business income losses and/or extra expenses incurred during the Closure Period that were denied by Defendants.

*Elegant Massage*, 2022 WL 433006, at \*20 (footnotes omitted). And the district court identified what it believed to be six common questions that supported class certification. *Id.* In concluding that these supposedly common issues predominated over individual issues, the district court stressed that the class members' claims all involved the same form contract and that State Farm uniformly denied their claims. *Id.* at \*17–18.

No doubt, at least two of the six questions the district court identified are fairly described as common: "Whether the term 'accidental direct physical loss' in the Policies includes losses resulting from the Orders," and "[w]hether the Loss of Income and Extra Expense Endorsements provide coverage for losses stemming from the Orders." *Id.* at \*20. These are classic legal questions interpreting contract language. Precisely because the policies are uniform across the class, answering those questions "will resolve an issue that is central" to the case "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

25

But our analysis of "whether 'questions of law or fact common to class members *predominate*'" must "begin[], of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (emphasis added) (quoting Fed. R. Civ. P. 23(b)(3)). In a breach-of-contract action like this one, "an essential element . . . is that the defendant's breach of a contractual obligation *caused* injury or damage to the plaintiff."[2] *Ramos v. Wells Fargo Bank, NA*, 770 S.E.2d 491, 493 (Va. 2015) (emphasis added). State Farm is not liable merely because it denied class members' claims, even if it did so uniformly; it is only liable if it *wrongfully* denied the claims. *EQT*, 764 F.3d at 366 ("[T]he mere fact that [a defendant] engaged in uniform conduct is not, by itself, sufficient to satisfy Rule 23(b)(3)'s more demanding predominance requirement" if the common conduct is not relevant to "ultimate liability.").

For coverage to apply, the policy requires that any business income loss was due to a "suspension" of the policyholder's operations that was "caused by accidental direct physical loss." J.A. 216.[3] Even assuming, as the district court did, that direct physical loss could include losses stemming from the executive orders, that determination would require

---

[2] I note that this brief assessment of the elements of the breach-of-contract claim and the proof it would require is the type of limited inquiry into the merits permitted under Rule 23. *See EQT*, 764 F.3d at 358 (recognizing merits inquiries are permissible "to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied'" (quoting *Amgen*, 568 U.S. at 466)). But we must stop there. Any more rigorous analysis of whether the class members could properly plead or establish a breach-of-contract claim violates our admonition that "Rule 23 does not give . . . courts a 'license to engage in free-ranging merits inquiries at the certification stage.'" *Id.* (quoting *Amgen*, 568 U.S. at 466).

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

26

an individual review of each denied claim to determine whether the loss of business income claimed was due to the executive orders or to another cause.

Elegant Massage claims that any possible differences go only to damages, but that is wrong. There is no liability in the first instance unless the executive orders caused a direct physical loss that triggered coverage.

Elegant Massage's story is itself illustrative. Citing a decline in customers due to COVID-19, Elegant Massage closed on March 16, 2020, *before* the first executive order went into effect on March 23. If there is a trial, State Farm will likely argue that Elegant Massage's business troubles long predated COVID-19 and the executive orders, that it did not attempt to reopen even once it was permitted to do so under the executive orders, and indeed that it never intended to reopen once it closed. Elegant Massage, naturally, will argue otherwise, taking the position that State Farm should be liable for damages at least for the period when the orders were in effect. Of course, we need not—and should not— wade into the merits of these arguments at this stage. But that example serves to illustrate the individualized nature of the inquiry: determining whether a uniform policy of denying claims breached any class member's contract requires an assessment of precisely why the class member submitted a claim for business loss.

Given how much individual inquiry into causation and injury would be required under the district court's formulation of the class, the predominance requirement is not satisfied. Accordingly, we must reverse the district court's grant of class certification. And because we can resolve the class-certification issue that is properly before us on appeal without extending our jurisdiction to cover the interlocutory motion-to-dismiss issue,

27

review of that interlocutory question is *not* "necessary, or essential," to resolve "the immediately appealable issue." *Dobson*, 68 F.4th at 167 (quoting *Ealy*, 514 F. App'x at 309). Put differently, because we can reach that conclusion without addressing State Farm's motion to dismiss, we *must* do so.

B.

Nothing in the majority's analysis changes this straightforward conclusion.

By beginning with the wrong question—whether the district court erred in denying the motion to dismiss—the majority not only exceeds its jurisdiction, but also renders a decision that contradicts itself. After all, the majority's conclusion on the merits would create a single class-wide answer to the question of whether State Farm is liable for executive-order-related business closures under its form contract—"no." So if we *could* begin with the merits question (which we cannot), then, according to the majority's own logic, we should *affirm* the class-certification order.[4]

Nor does the majority explain why an analysis of class certification like the one I provided above is impossible or meaningless if we do not also analyze the denial of the motion to dismiss. Instead, the majority merely states that review of the motion-to-dismiss order is necessary to meaningful review of the class-certification decision because the

---

[4] To be sure, when a district court grants a motion to dismiss before addressing class certification, it has discretion to decline to certify a class. *See Boulware v. Crossland Mortg. Corp.*, 291 F.3d 261, 268 n.4 (4th Cir. 2002). But the majority places this case in an odd procedural posture by addressing the merits of a motion to dismiss *after* a class has already been certified. The majority opinion does not explain why, in this posture, the class *must* be decertified if we grant the motion to dismiss. Nor does the majority opinion explain which specific Rule 23 requirement the class fails to satisfy once the motion to dismiss is granted.

28

"class certification order . . . relies in part on the legal conclusions reached in the district court's denial of the motion to dismiss." Majority Op. at 13.

Certainly, the district court's determination that State Farm could be held liable for COVID-19-related closures under the policy "guided" its later grant of class certification. *Id.* at 12. But a district court's ruling on a motion to dismiss will always guide a later order granting class certification. When a district court grants class certification, it assumes that there are live issues to be resolved, and it will often reference issues from its prior discussion of the claims to determine if they can be resolved by common proof. This case is no different: in its order certifying the class, the district court assumed there were live claims and discussed the merits of the claims only to the extent it sought to determine whether they could be supported by common proof (e.g., evidence that each class member held a contract that was "the same"). *Elegant Massage*, 2022 WL 433006, at *18.

Since nothing distinguishes what the district court did here from other class-certification orders, I see no limiting principle in the majority opinion that prevents our review of almost any denial of a motion to dismiss filed in a class action. And I struggle to understand how that change in the scope of our review is compatible with our well-established bar against "free-ranging merits inquiries at the certification stage." *EQT*, 764 F.3d at 358 (quoting *Amgen*, 568 U.S. at 466).

The majority also cites our decision in *Scott v. Family Dollar Stores, Inc.*, for the notion that an intervening change in law while the case is on appeal permits us to exercise pendent appellate jurisdiction. Majority Op. at 13 (citing *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 111 (4th Cir. 2013)). Not so.

29

In *Scott*, we had jurisdiction pursuant to Rule 23(f) to review the district court's denial of class certification, and we exercised pendent appellate jurisdiction to review the district court's related denial of a motion for leave to amend. *Scott*, 733 F.3d at 111. In exercising pendent appellate jurisdiction, we first explained that the decisions were *inextricably intertwined* because the district court's interpretation of *Wal-Mart Stores, Inc. v. Dukes* was the sole issue underlying both the class certification and denial of leave to amend. *Scott*, 733 F.3d at 111. The district court in *Scott* had denied class certification based on its interpretation of the commonality inquiry from *Wal-Mart* and had denied leave to amend as futile because it concluded, based on that same interpretation of *Wal-Mart*, that the plaintiffs could not allege commonality. *Id.* at 110. Therefore, the issues underlying both rulings were identical.

We added that our review of the motion for leave to amend was *necessary for meaningful review* of the denial of class certification because "the proposed amended complaint include[d] specific company-wide policies that allegedly cause[d] a disparate impact." *Id.* at 111. Since those allegations were not in the original complaint and could have satisfied the standard for class certification as set out in *Wal-Mart* even if the allegations in the original complaint did not, it was necessary to address the motion to amend so that we could review all the plaintiff's relevant allegations in favor of class certification. *Id.*

To be sure, *Wal-Mart* was decided while *Scott* was pending before the district court, and the district court based its decisions on its interpretation of that new precedent. But nothing in *Scott* suggests that *Wal-Mart* being decided in the middle of the case created a

special exception to permit our exercise of pendent appellate jurisdiction. Rather, our justifications for exercising pendent appellate jurisdiction would have been unchanged had *Wal-Mart* been decided long before the district applied its erroneous interpretation to both the motion to amend and the motion for class certification.

Further, even if an intervening change in law could somehow independently support our exercise of pendent appellate jurisdiction, it does not do so here. The majority opinion states that our decision in *Uncork & Create LLC v. Cincinnati Insurance Co.*, 27 F.4th 926 (4th Cir. 2022), is "directly applicable" to this appeal. Majority Op. at 13. But that is wrong for two reasons. For one, unlike the *Wal-Mart* decision relevant in *Scott*, our decision in *Uncork* dealt with a merits issue, not the standards for class certification. Accordingly, while *Uncork* might have something to say about whether all the class members' claims are meritorious, it has nothing to say about whether their claims should be adjudicated together. Moreover, our decision in *Uncork* dealt with contract interpretation principles under *West Virginia* state law, not *Virginia* state law as is at issue here. *See Uncork*, 27 F.4th at 928. So, while *Uncork* provides persuasive authority, it is not as "directly applicable" to this case as the majority claims.

C.

If any question remains about whether we can exercise pendent appellate jurisdiction here, our resolution of a prior appeal in this case confirms that we do not need to review the denial of the motion to dismiss in order to review the district court's decision on class certification.

31

The district court denied State Farm's motion to dismiss in December 2020. *See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 506 F. Supp. 3d 360 (E.D. Va. 2020). After Elegant Massage filed a May 2021 motion for class certification pursuant to Rule 23(b)(2), the district court sua sponte certified an "opt-in" Rule 23(b)(3) class. *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 2:20-cv-265, 2021 WL 3686668, at *11 (E.D. Va. Aug. 19, 2021). We permitted State Farm to appeal from that order pursuant to Rule 23(f). *State Farm Mut. Auto. Ins. Co. v. Elegant Massage, LLC*, No. 21-255, 2021 WL 4202678, at *1 (4th Cir. Sept. 2, 2021).

On appeal, State Farm challenged the district court's decision to sua sponte certify a class under Rule 23(b)(3) and presented arguments about contract interpretation that mirror those made in its motion to dismiss and in this appeal. *E.g.*, Petition for Permission to Appeal, *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 21-255 (4th Cir. Aug. 31, 2021), ECF No. 2. Rather than address the motion to dismiss and throw out the whole case, we stayed within our proper jurisdictional bounds by reversing and remanding based solely on class certification. *State Farm*, 2021 WL 4202678, at *1. The majority opinion acknowledges the existence of that previous opinion, but it fails to offer any convincing explanation of why we must address the motion to dismiss now when we were not compelled to do so before. *See* Majority Op. at 6 n.4.

Since the exercise of pendent appellate jurisdiction would take us beyond the boundaries set by Congress and our precedent, I would wait to review the merits until the district court issues a final order.

III.

My dispute with the majority over pendent appellate jurisdiction might seem abstract, but our disagreement about when we must stay within the bounds Congress has set on our review has significant practical implications. It is therefore worth highlighting a few consequences of the majority's decision.

First, while the majority's opinion may at first appear to promote judicial economy—because the named plaintiff's claims will be resolved on the merits sooner than if we were to limit our review to the order granting class certification—that benefit, in addition to not providing a justification to exercise jurisdiction where it is lacking, may well prove elusive. By resolving the case as to only the named plaintiff, the majority limits the preclusive effect of the final judgment. *See* 6 William Rubenstein, Alba Conte & Herbert B. Newberg, Newberg and Rubenstein on Class Actions § 18:15 (6th ed. 2022 & Supp. 2023) (explaining that while class action judgments "bind all class members who do not opt out," "[i]n non-class litigation, only parties to a lawsuit can be bound and hence precluded by the judgment"). While the class members other than Elegant Massage will be bound by the precedential effect of our decision within the Fourth Circuit, they can attempt to bring an identical claim outside the Fourth Circuit—perhaps in Virginia state court or in either federal or state court in Illinois, where State Farm is headquartered—and convince that court to adopt the district court's reading of Virginia law.

Had the case played out differently, a ruling on the merits could have had a much broader preclusive effect. As described above, the class the district court certified here fails to satisfy the predominance requirement. But, if we properly limited our review to only the

33

class-certification decision, the district court could have taken another stab at certification on remand. And, in my view, the district court likely could have utilized Rule 23(b)(3) or Rule 23(b)(2) in conjunction with Rule 23(c)(4) to certify a class only as to the limited issue of the scope of insurance coverage under the form policy. *See Gunnells*, 348 F.3d at 441 ("[S]ubsection 23(c)(4) should be used to separate 'one or more' claims that are appropriate for class treatment, provided that within that claim or claims (rather than within the entire lawsuit as a whole), the predominance and all other necessary requirements of subsections (a) and (b) of Rule 23 are met." (quoting *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989)));[5] Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues."). With an issue class certified, a merits order applying the majority's interpretation of Virginia contract law would have bound *all* class members through claim preclusion.

Second, the majority's more flexible exercise of pendent appellate jurisdiction changes the incentives for future parties to file petitions for review pursuant to Rule 23(f). Exercising jurisdiction here encourages future defendants to seek our opinion whenever a district court denies a motion to dismiss and then grants class certification. That means

---

[5] In *Gunnells*, we focused on using Rule 23(c)(4) to split "claims," but we recognized that Rule 23(c)(4) permits a class action on "particular issues" and approvingly discusses the approach of certifying a class with respect to individual issues. *Gunnells*, 348 F.3d at 441 ("Nor are we alone. . . . Several courts and a number of distinguished commentators have explicitly endorsed a broad issue specific predominance analysis of Rule 23." (emphases omitted)). And other circuits have consistently found Rule 23(c)(4) to permit certifying a class with respect to a particular issue, not just a particular claim. *See Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 761–62 (D.C. Cir. 2023) (collecting cases).

more defendants will file Rule 23(f) petitions in hopes that a merits issue will catch our attention, even if a district court's evaluation of class certification was otherwise correct.

Third, by exercising jurisdiction in what might seem like a straightforward extension of our caselaw on contract interpretation from West Virginia law to Virginia law, we risk permitting early review of the merits in other cases that are far more complex. By denying us statutory authority to conduct interlocutory review outside of narrow circumstances, such as those permitted by Rule 23(f) or § 1292(b), Congress expressed an inclination for keeping inquisitive appellate judges from weighing in on the merits of claims before the facts are fully developed. I worry that the majority's exercise of jurisdiction opens Pandora's box by providing the basis on which future panels may justify inquiries into the merits of class actions that neither I nor the members of the majority would think ripe for appellate review.

Deciding this appeal in the manner that the majority has might save some time and expense in resolving the named plaintiff's case compared to ordering the class decertified without addressing the motion to dismiss. But Congress has not permitted us to take that shortcut, nor is that shortcut necessary for our review of the issues Congress has permitted us to consider. I therefore concur in the judgment only with respect to the majority's decision to reverse the district court's grant of class certification. I respectfully dissent as to those portions of the majority opinion that address the district court's decision on the motion to dismiss and as to its instructions to dismiss the entire case on remand.